Per Curiam :
This case comes before the court on exceptions by plaintiff to a recommended decision filed December 22, 1971, by Trial Commissioner Roald A. Hogenson pursuant to Rule 134(h). The court has considered the case on the briefs and oral argument of counsel. Since the court agrees with the decision, as hereinafter set forth, it hereby affirms and adopts the same as the basis for its judgment in this case. Therefore, plaintiff is not entitled to recover and the petition is dismissed.
OPINION OP COMMISSIONER
Hogenson, Commissioner: Plaintiff seeks judgment that he is entitled to recover the difference between the salaries of Supervisory Contract Specialist, GrS-13, and Contract Specialist, GS-12, from November 21, 1967, until the date of his Civil Service retirement for physical disability on September 2, 1969.
After a full review of the record and upon consideration of the legal authorities cited by the parties and their respective requested findings of fact, objections and briefs, it is my opinion based upon the following detailed and ultimate findings of fact and conclusions, that plaintiff is not entitled to recover, and that plaintiff’s petition should be dismissed.
Findings op Fact
1. Until his retirement for physical disability, effective September 2, 1969, plaintiff was a career Civil Service employee of defendant.
2. For a considerable period of time prior to November 21, 1965, plaintiff served as a Purchase Methods Analyst in grade GPS-14 for the Central Contract Management Region, United States Air Force, Dayton, Ohio. By reason of a Department of Defense directive closing certain areas and *510 abolishing certain positions, plaintiff was given a notice of reduction in grade to GS-12, effective November 21,1965.
Pursuant to the provisions of the Salary Retention Act, plaintiff’s salary was to remain and did remain at the GS-14 level for 2 years thereafter, or through November 20, 1967.
3. Commencing on November 21, 1965, and until his retirement, plaintiff was employed as Contract Specialist, GS-12, at the Electronics Components Procurement Branch, Procurement Division, Procurement & Production Directorate, United States Army Electronics Command, Fort Monmouth, New Jersey.
After November 20,1967, and until his retirement, he was paid a salary at the GS-12 level.
4. Plaintiff’s employment at Fort Monmouth was effected as a result of his entitlement to priority placement referral because of the deactivation of the Central Contract Management Region, United States Air Force, Dayton, Ohio.
Through error, the United States Army Electronics Command failed to record plaintiff’s registration in the career field for available GS-14 positions upon his transfer to Fort Monmouth.
5. From November 1965 to December 1966, Mr. Charles J. Foley was the Acting Chief of the Electronics Components Procurement Branch.
Until September 12,1966, Mr. Foley was plaintiff’s second line supervisor, there being an intermediate supervisor, while plaintiff performed the duties of a Contract Specialist, GS-12.
During the rest of Mr. Foley’s tenure as Acting Chief, Mr. Foley was plaintiff’s first line or direct supervisor, while plaintiff was performing the duties of a Supervisory Contract Specialist, GS-13, serving on detail as an acting section chief.
Plaintiff was never promoted to the position of Supervisory Contract Specialist, GS-13, but remained in grade GS-12 until his retirement.
6. Plaintiff was detailed either officially or unofficially to the duties of Supervisory Contract Specialist, GS-13, from September 12,1966, to the middle of April 1967.
*511 Mr. Foley verbally detailed plaintiff to those duties in early September 1966, 'and confirmed such detail in writing in December 1966, shortly before Mr. Foley was transferred from the Electronics Components Procurement Branch.
The detail of plaintiff to the duties of Supervisory Contract Specialist, GS-13, was not made a matter of official record until April 3, 1967, and the extension of such detail beyond 6 months was not acted upon by the Civil Service Commission.
7. For the appraisal period from November 21, 1965, to November 30, 1966, Mr. Foley rated plaintiff’s performance as “average,” and recommended plaintiff for placement referral as “Program Analyst, GS-12, GS-13.”
Mr. Foley noted that plaintiff had training needs in the subject matter of “Procurement, Contract Administration, Procurement Law;” and needed experience in “On-the-job training in complex, high dollar value B. & D procurements.”
8. On October 13, 1966, the Civilian Personnel Division, Fort Monmouth, New Jersey, undertook to fill the vacancy in the position of Supervisory Contract Specialist, GS-1102-13, in the Electronics Components Procurement Branch. This was the position to which plaintiff was detailed.
A formal request for a referral list of best qualified candidates was forwarded to the Commanding General, United States Army Materiel Command, Washington, D.C., where in accordance with the applicable career program, computers were used to supply names of qualified candidates.
From the names thus supplied, a screening panel then determined the list of best qualified candidates for the vacancy, and a list of 18 such candidates was prepared under date of November 16, 1966.
Plaintiff was not included on such list.
9. The screening panel did not give consideration to plaintiff as a candidate to be included on the list of best qualified candidates, because plaintiff was not registered in the career program, and his name was not supplied to the screening panel in the computerized operations.
10. On November 29,1966, the Chief, Fort Monmouth Procurement Division, forwarded the list of the 18 best qualified candidates, together with the computer print-outs furnishing *512 the qualifications of each of such candidates, to the Chief, Electronics Components Procurement Branch, with the request that the latter select a recommended candidate and advise the former by December 9,1966.
11.Mr. Foley, as Acting Chief, Electronics Components Procurement Branch, then contacted all of the 18 candidates, except one James W. Higdon, who failed to reply to the inquiry made. Only three of the candidates indicated availability for the position vacancy, i.e., Joseph R. Yarady, Anthony J. Frabizio, and Charles A. Chiarella. Each was interviewed and given an opportunity to verify the accuracy of his career employee record form.
Mr. Foley determined that the following evaluation criteria and indicated scores and weights were most important for the position vacancy:
Maximum
Score Weight score
Education 0-3 2 6
Experience 0-3 5 15
Performance data 0-3 3 9
Awards 0-3 2 6
Potential 0-3 2 6
Total___ 42
He scored the three available candidates as follows: Joseph R. Yarady, 38; Anthony J. Frabizio, 36; and Charles A. Chiarella, 31.
Mr. Foley recommended that Joseph R. Yarady be appointed to the position vacancy of Supervisory Contract Specialist, GS-1102-13, in the Electronics Components Procurement Branch.
His written recommendation, including the matters set forth in this finding, was forwarded under date of December 3, 1966, to the Chief, Fort Monmouth Procurement Division.
12. On December 7, 1966, the Chief, Fort Monmouth Procurement Division, concurred in the recommendation made by Mr. Foley, and requested that action be expedited to promote Joseph R. Varady to the position of Supervisory Contract Specialist, GS-13.
13. On December 22,1966, the Director, Procurement and Production, Fort Monmouth, selected Joseph R. Varady to *513 fill the position of Supervisory Contract Specialist, GS-1S, and Mr. Varady was officially promoted to that position on March 12, 1967, while plaintiff was detailed to the position. Plaintiff remained detailed to such position until the middle of April 1967, when he was replaced by Mr. Varady. Plaintiff had not yet been registered in the career employee program.
14. In the communication mentioned in finding 10, Mr. Foley, as Acting Chief, Electronics Components Procurement Branch, was instructed that he was required to consider each candidate on the referral list and indicate disposition. Had plaintiff been on such list, obviously Mr. Foley would have given consideration to plaintiff and rated him in the written recommendation which he prepared and submitted.
15. Sometime prior to the preparation of the list of best qualified candidates, which was used 'as stated above in the selection of Mr. Varady, a previous list of such candidates had been prepared. On the basis of the prior list, Mr. Sam Warm was nominated to fill the pertinent vacancy, but he turned it down, and a request was then submitted for a new list of better qualified candidates. Before this second list had been prepared, the one resulting in Mr. Varady’s selection, Mr. Foley recommended to his first line supervisor that Mr. Varady be appointed to the pertinent position vacancy. Mr. Varady held a GS-1102-12 position at Fort Monmouth. Mr. Foley did not know Mr. Varady personally, but had learned in discussions with co-workers and with Varady’s superior officer, and in his services on ad hoc committees, reviewing applications of persons seeking employment, including the application of Varady, that Varady was very well qualified. On the basis of this experience, Mr. Foley had recommended Mr. Varady for the pertinent position vacancy prior to the time that he saw the list upon which the final action was taken.
16. During the period of time from September 12, 1966, to December 1966, when Mr. Foley was plaintiff’s first line or direct supervisor in the performance by plaintiff of the duties of Supervisory Contract Specialist, GS-13, Mr. Foley observed plaintiff’s performance on practically a daily basis. He could have recommended plaintiff for the existing position vacancy, subject to the approval of Foley’s first line super *514 visor. He did give consideration to making sucb a recommendation, but refrained from doing so because he felt that plaintiff’s performance had not measured up to the existing criteria used in consideration of employees to be nominated for potential promotion.
17. On April 22, 1967, plaintiff filed a grievance with the Commanding General, United States Army Electronics Command, Fort Monmouth, New Jersey, alleging that there was a violation of existing promotion regulations with the result that he was not properly considered and selected for the Supervisory Contract Specialist position.
18. A report of Inquiry, dated July 24,1967, prepared by Harry Bernhardt, Employee Relations Specialist, who was an Army employee at Fort Monmouth, stated, in pertinent part, as follows:
3. ALLEGATIONS AND FINDINGS
a. Mr. 'Sperling, in his letter (Tab A), states that Mr. Desmond was not “properly considered for” a position in the Electronics Components Branch. In this regard, it is pointed out that Management ha's the prerogative of nominating or not nominating any individual for a promotional opportunity. In the case of Mr. Desmond, Management did consider him as it has the opportunity to see and evaluate his performance in the noaition from September 12,1966 forward when he was informally detailed. Management, having observed him, did not choose to nominate him. Mr. Desmond’s selection for the detail was based upon his holding the highest grade in the section and not 'because he was especially qualified.
b. Mr. Sperling, in paragraph 4 of his letter (Tab A). states that Mr. Desmond’s performance as Section Chief was not recognized in his performance rating for the period November 1965 to November 1966. Mr. Desmond’s detail, which covered three months of the rating period, was given attention. In his rating for the period (Tab B), Mr. Desmond was judged for 'his supervisory responsibilities in element 9, “Supervision and Administration”, as rating level 3, or average. It should be noted that Mr. Desmond’s current job description does not contain Supervision as part of his duties in his position as Contract Specialist, GS-1102-12. Additionally, in the official Employee Performance and Career Appraisal, DA Form 2302-4, dated 1 March 1967, which Mr. Desmond signed, *515 attesting that the matters covered were brought to his attention, he was found to have a need for training in Procurement, Contract Administration, Procurement Law, and a need for experience in handling complex, high-dollar value R&D Procurements. Outlined, therein, is a plan for meeting these training needs.
c. In paragraph 1 of Mr. SperMng’s letter (Tab A), it is stated that Mr. Desmond’s detail was made verbally and that when the detail was extended beyond the six-month period, no detail authorization had been requested from the U.S. Civil Service Commission. The fact is, a request was made to Civilian Personnel on 15 March 1967 to extend the detail of Mr. Desmond for an additional six months from 12 March 1967 to December 1967, to. provide time for Mr. Varady to complete a multimillion dollar project he was working on in the Electronics Components Procurement Branch. This request was not processed by Civilian Personnel as Mr. Varady’s promotion had already been effected 12 March 1967. Mr. Desmond continued to serve in the detail until 14 April 1967. (Mr. Desmond served in an official detail from 12 September 1966 to 1 March 1967, Tab C)
d. In paragraph B of Tab A, Mr. Sperling states that Mr. Desmond should have been promoted non-eompeti-tively because of his saved-pay status. The Career Program Regulations provide for consideration of employees who are receiving salary retention to be placed on the list of “best qualified” when the individual, by education and experience, is “best qualified.” A determination was made at this Command that Mr. Desmond lacked appropriate experience and, accordingly, was not nominated.
4. CONCLUSIONS
a. Mr. Desmond was considered by Management as it had the opportunity to observe his work, did so, and chose not to nominate him for consideration.
b. Mr. Desmond was not entitled to automatic repro-motion as an exception to the Career Management Program Regulations.
c. No facts have been introduced which would show that Mr. Desmond was, in fact, not properly considered for a promotional opportunity.
19. Mr. Harry Bernhardt contacted Mr. Eoley in connection with plaintiff’s grievance for allegedly not being considered for the pertinent position vacancy. This contact was made by telephone, as were all inquiries made by Mr. Bernhardt of other personnel at the base. Mr. Foley discussed *516 with Mr. Bernhardt plaintiff’s qualifications to perform the duties of Supervisory Contract Specialist, and advised that he had observed plaintiff’s performance and did not choose to nominate plaintiff to such position, having concluded that plaintiff had not demonstrated the degree of 'ability required for the GrS-13 position.
Mr. Foley further advised Mr. Bernhardt that in retrospect he felt that had plaintiff been on the referral list of candidates, he would not have recommended that plaintiff be selected for the pertinent position vacancy, based on plaintiff’s performance of duties, which he had observed during the period from September 12, 1966, to December 1966.
20. Mr. Bernhardt also had a telephone conversation with Mi\ Hal Stein, a staffing specialist in charge of a personnel unit at Fort Monmouth, concerned with handling promotions, giving special consideration to promotion of any employee who had been down-graded through no fault of his own. Mr. Stein advised Mr. Bernhardt that a determination was made that plaintiff lacked the appropriate experience and was not nominated to fill the pertinent position vacancy.
21. Mr. Bernhardt submitted a draft of his Report of Inquiry to his supervisor (Supervisory Employee Relations Specialist) for review. Such supervisor deleted therefrom a conclusion proposed by Mr. Bernhardt to the effect that plaintiff had not been registered in the career employee program and that his name could not have been included on a referral list. The final draft of the report did not contain such conclusion.
22. The Director of Personnel and Training, Fort Monmouth, on July 28, 1967, submitted the Report of Inquiry, prepared by Mr. Bernhardt, to the Commanding General, advised that such report showed that plaintiff was considered for promotion to the pertinent position vacancy, and further stated, in pertinent part, as follows:
b. Management did have the prerogative of nominating or not nominating Mr. Desmond for the promotional opportunity. In this connection, Mr. Desmond was observed and evaluated from 12 Sep 67 [sic] when he was informally detailed. After observation of his performance and in consideration of certain aspects of his experience which required improvement, it was decided not *517 to nominate him. Mr. Desmond’s selection for the detail Avas based solely upon his having the highest grade in this section and in view of his previous supervisory experience.
23. By letter dated August 21,1967, the Commanding General, United States Army Electronics Command, furnished plaintiff a copy of the Eeport of Inquiry, and ’advised plaintiff, in pertinent part, as follows:
On the basis of the Eeport of Inquiry, it is my decision that you have produced no substantive evidence in connection with your allegation that you were not properly considered for promotion. Accordingly, no further action will be taken by this Command.
If this decision is not acceptable to you, you have the right to request further review by the Commanding General, US Army Materiel Command, Washington, D.C., 20315.
The Commanding General further advised plaintiff that any request for review by the higher Command would have to be submitted through his Command, that any such request must state why the decision was not acceptable and the remedial action sought, and that review at the higher Command would be based solely on the record developed, without entitlement to personal presentation by plaintiff.
24. Plaintiff neither requested nor was he given a hearing or an opportunity to make a personal presentation in the course of the administrative processing of his grievance.
25. By letter from plaintiff’s designated representative, dated September 5,1967, 'addressed to the Commanding General, U.S. Army Electronics Command, plaintiff requested a review and investigation by the U.S. Civil Service Commission of the August 21,1967 decision of the Commanding General, U.S. Army Electronics Command. Plaintiff alleged that he was denied the opportunity of a personal presentation as required by Chapter 771, paragraph l-7f of the Federal Personnel Manual. Plaintiff asserted that the Eeport of Inquiry on his grievance was in error in the statements that management chose not to nominate him for consideration and that plaintiff was not entitled to automatic promotion. Plaintiff argued that management failed to register him, and therefore failed to give him any consideration, although by regula- *518 tion he was entitled to priority referral and mandatory placement.
26. Plaintiff’s request for review was forwarded to the Director, New York Regional Office, U.S. Civil Service Commission, by letter from the Civilian Personnel Officer, U.S. Army Electronics Command, dated October 9,1967.
27. Under date of December 11, 1967, the Director, New York Region, U.S. Civil Service Commission, advised plaintiff, in pertinent part, as follows:
The position in question was filled through the career program referral process. Under Department of Army and ECOM Regulations, positions in the procurement field must be filled by selection from career referral lists. Mr. Desmond had no right to priority consideration but could normally have been considered only if his name appeared on the referral list. It is true that Mr. Desmond was not registered in the Department of Army referral system. Local management officials have indicated, however, that Mr. Desmond was in fact considered for the position in question. He was detailed to the position for several months. Management did not, however, choose to exercise its prerogative to nominate Mr. Desmond when requesting a career referral list to fill the position. The failure to nominate him was not an oversight but rather a positive determination that he was not highly qualified for the position. If Mr. Desmond’s name had appeared on the referral list, management would have had no obligation to select him. Since Mr. Varady was properly selected from a career referral list we find no basis for nullifying the promotion and placing Mr. Desmond in the position. The only practical corrective action we can direct is to require that Mr. Desmond be registered in the career system. The agency has already taken action to accomplish this.
28. By letter dated February 12, 1968, addressed to the United -State's Civil Service Commission via the Commanding General, U.S. Army Electronics Command, the Commanding General of the U.S. Army Materiel Command, and the Secretary of the Army, plaintiff requested review of the decision of August 21, 1967, made by the Commanding General, U.S. Army Electronics Command.
29. By letter dated May 29, 19.6,8, addressed to the Civil Service Commission, via the Secretary of the Army, plain- *519 biff requested prompt consideration of Ms request for review contained in Ms letter of February 12,1968.
30. On May 14,1968, a registered nurse at Fort Monmouth advised Mr. Varady, as the first line supervisor of plaintiff, that she had earlier that day taken plaintiff’s blood pressure and found it to be extremely high, and also that plaintiff had stated that he was at work against his doctor’s advice. The nurse recommended that Mr. Varady have plaintiff leave work, because in her opinion, he could have a heart attack at any time. Mr. Varady then advised plaintiff of the nurse’s statements, and urged plaintiff for Ms own well being to go home. Plaintiff was reluctant to accept such advice, stating that he had already overdrawn all of Ms sick and annual leave. He expressed the desire to telephone and discuss Ms leave problem with the timekeeper at the base. Shortly thereafter plaintiff left the office for the day.
31. On June 11,1968, Mr. Varady requested that plaintiff be given a complete physical examination to determine his ability to perform the tasks outlined in his job description. Mr. Varady advised that plaintiff’s attendance at work had averaged under TO percent during the period April 1967 through June 11,1968, and that there was serious doubt that plaintiff had the necessary stamina to perform Ms current job.
On June 12, 1968, a medical examination of plaintiff was conducted, and the examining doctor expressed the opinion that plaintiff was capable of performing Ms job, and that his condition warranted his return to full duty.
32. Plaintiff had been represented in submission of his grievance by an agent of a local lodge of the American Federation of Government Employees, but in time came to be represented by its National President.
33. By letter dated August 29, 196,8, the Director, Bureau of Inspections, U.S. Civil Service Commission, advised the National President, American Federation of Government Employees, that upon review of the complete file relating to plaintiff’s grievance, no evidence was found that the Department of the Army violated a basic principle of the Federal Merit Promotion Program or applicable promotion plans. The letter further stated that plaintiff was considered for the position in question when the request for a referral list was *520 sent to higher headquarters, but was not nominated because management did not feel that he was best qualified; that plaintiff’s grievance had been given proper consideration under the Department’s grievance procedure; and that under these conditions, the final decision of the Department must stand.
34. By letter dated September 6,1968, the National President requested reconsideration by the Bureau of Inspections of the matter, asserting that the point of the appeal had not been fully appreciated, that is, that the Civil Service Commission itself in FPM Bulletin 335-5 of November 6, 1967, relating to repromotion of employees who are demoted involuntarily, states that: “The Commission not only authorizes agencies to give special consideration to these employees under their merit promotion plans but it expects them to do so.” It was asserted that this language does not leave the agency the option of selecting someone the agency considers better qualified than the experienced qualified employee downgraded through no fault of his own.
35. By letter dated November 18,1968, the Director of the Bureau of Inspections advised the National President as follows:
This is in further reply to your letter of September 6, 1968, regarding the William Desmond case.
We have again given careful consideration to the facts involved in this case. Particular attention has been devoted to the issue of repromotion of employees who are demoted involuntarily. The point which must be emphasized is that the Commission expects agencies to give special consideration to employees who have been downgraded through no fault of their own. This does not mean that mandatory selection of such employees is an absolute requirement.
The principle of selection from the best qualified group is one of the basic tenets of the Federal Merit Promotion Program. In carrying out this responsibility, agency managers are charged with and must retain the final selection authority. To dictate selection responsibility or abrogate the agency manager’s judgmental determination would weaken the structure of the merit system.
With respect to whether Mr. Desmond received special consideration, the point could well be made that his detail to the higher grade position constituted special *521 consideration. At the expiration of his detail, management officials did not choose to nominate Mr. Desmond for inclusion on the referral list. This was a positive determination by management, after a period of on-the-job try out, that Mr. Desmond was not best qualified. In efEect, Mr. Desmond was considered for this higher grade position on two separate occasions — at the time he was detailed to the position and at the time a request for a referral list to fill the position was sent to higher headquarters.
The repromotion provision of FPM Bulletin 385-5 is, at present, a supplement to the overall merit promotion program contained in Chapter 335 of the basic FPM. However, the new merit promotion chapter, issued on September 20, 1968, has a repromotion provision incorporated in the basic procedures. These new procedures stipulate that an employee who has been demoted without personal cause ordinarily should be repromoted when a vacancy occurs in a position at his former grade (or any intervening grade) for which he has demonstrated that he is well-qualified, unless there are persuasive reasons for not doing so.
_ The new regulation further provides that consideration of an employee eligible for repromotion under these conditions must precede efforts to fill the vacancy by other means, including competitive promotion procedures ; i.e., repromotion of such employees may be made as an exception to the merit promotion program. Agency headquarters must develop and issue promotion guidelines under the new chapter no later than January 1, 1969. All aspects of agency promotion programs, including specific promotion plans, must conform with the new chapter no later than July 1,1969.
We regret that a more favorable reply cannot be made. Our further review of the case reveals no evidence which would appear to warrant additional action by the Commission.
36. By letter dated January 5,1969', plaintiff by the agent of the local lodge of the employees union advised the Director, Bureau of Inspections, that he was in receipt of a copy of the Director’s letter of November 18, 1968, and asserted that plaintiff had been denied a promotion to which he was legally and morally entitled, specifying alleged errors summarized as follows: (1) Failure of the Army Electronics Command to register plaintiff in the career employee program; (2) failure of the grievance investigator to provide plaintiff with *522 an opportunity to make a personal presentation of the grievance; (8) failure of the agency to give plaintiff consideration for the pertinent position, as shown by the agency’s nomination of Mr. Yarady prior to plaintiff’s verbal detail to such position on September 12, 1966; and (4) denial of consideration of plaintiff for promotion to the pertinent position by failure of personnel officials to make available plaintiff’s records for use by the screening committee. Plaintiff again requested a prompt consideration and equitable decision of his case.
37. By letter dated February 3,1969, the Bureau of Inspections advised plaintiff’s representative that it had again reviewed plaintiff’s entire case in 'light of plaintiff’s letter of January 5,1969; that no new or additional information had been presented to change its previous conclusions; that within the guidelines of the Federal Merit Promotion Program, agency selecting officials have the discretion of selecting from among the best qualified candidates the person they feel has the qualities most essential for success on the particular job; that its review confirmed its earlier findings that plaintiff was given consideration for the position in question when the request for a referral list was sent to higher headquarters; that as the Command did not feel plaintiff was the best qualified candidate, he was not nominated for referral; and that based on further review of the case, “we must again conclude that further action by the Commission does not appear warranted.”
38. Plaintiff, under date of June 27, 1969, submitted an application with the Civil Service Retirement System for disability retirement. The application was duly approved, and plaintiff was retired for physical disability ('hypertension associated with headaches and extreme nervousness), effective September 2, 1969. At that time, he held grade GS-1102-12, step 10.
Ultimate Findings and CONCLUSIONS
39. Department of the Army Civilian Personnel Regulations, CPU E2, Grievance and Appeal Procedures, effective June 22,1962, define Type II employee grievances in Section 3-la as “those involving employee dissatisfactions with *523 in-service placement and training and development situations or conditions” and includes under such definition inter alia “Denial of consideration for promotional opportunities.” With respect to investigation of such a grievance; Section 3-3b(l) provides:
b. Upon receipt of the written grievance, a Grievance Examiner or some appropriate staff member will be designated to conduct such investigation as is necessary to develop the facts of the case.
(1) The investigation will be conducted promptly. This will include contacting those individuals identified in the grievance who may have information pertinent to the issues. Where considered appropriate by the investigating official, the investigation may include an mformal hearing with the employee, his representative if any, and the management officials involved.
It is concluded that it was discretionary for the pertinent agency to provide plaintiff the opportunity to make a personal presentation of his grievance, and that there was no abuse of discretion by the agency for its failure to offer plaintiff such an informal hearing, particularly when plaintiff made no request theref or.
40. Department of the Army Civilian Personnel Regulations 950-1, entitled Career Management Basic Policies and Requirements, provides principles to be applied through individual Army-wide career employee programs (950-1.2-la) , each in concept and design primarily a management system, but with a basic philosophy requiring a covenant with employees to provide them with fair opportunity to fulfill their career goals, with management seeking to fill each position with the best qualified, available candidate (950-1.2-1'b). Provision was made for a central inventory and referral system requiring Army-wide competition among career employees for promotion and development opportunities (950-l.l-2c). It was provided that Army civilian personnel offices were responsible for making submissions for registration of career employees in the programs (950-1.4-3). It was provided that promotion opportunities at all grade levels would be provided entirely on the basis of individual fitness and merit, without regard to factors which of them *524 selves have no bearing on job performance such as race, color, sex, religion or national origin (950-1.2-61)).
Paragraph 4 — 7a of such regulations provides with respect to registration of Army career employees in career programs as follows:
a. Basic provision. The registration, in one or more central inventories, of ail employees occupying positions specifically covered by individual career program regulations is mandatory. * * *
Finding 4 above, to the effect that the pertinent agency erred in failing to register plaintiff in the career employee program, was based upon a stipulation of the parties, and inherent is the conclusion that plaintiff held a position specifically covered by an individual career program under the regulations. Indeed plaintiff’s position in grade GS-1102-12 was the same held by 17 of the 18 persons who were selected by the Screening panel as best qualified for the pertinent position vacancy.
However, the evidence in this case does not establish, and it cannot reasonably be found, that had plaintiff been registered in the career employee program, the screening panel would have selected him as one of the best qualified candidates to be included on the referral list to be considered for the pertinent position vacancy. Moreover, the defect in the administration of the career program cannot be held to have prejudiced plaintiff, as he was actually considered but rejected in the selection process within the pertinent agency, and it is apparent that he would not have been selected even if he had been included on the referral list.
41. Department of the Army Civilian Personnel Begula-tions, CPB, CP 1.4-6e, May 1965, provides:
e. The procedures and standards set forth below will be observed in identifying the “best qualified” candidates for inclusion on referral lists. Personnel officials and screening committees will take particular care to assure that full consideration is given to the mandatory placement of eligible employees under the Overseas Interchange Program (CPB 01.3-8) and to employees absent on extended military duty who have restoration rights, to employees who are on extended educational assignments, to employees Who have been or are scheduled to be adversely affected by a reduction-in-force, and to those *525 who have been changed to lower grade for other reasons which were beyond their control. * * *
42. Federal Personnel Manual, Chapter 835, Promotion and Internal Placement, Subchapter 6, paragraph 6-3c (2) and (5), March 11, 1965, provide:
(2) Special consideration for employees. Employees demoted involuntarily without misconduct or inefficiency on their part are thereafter given such special consideration 'as an agency finds feasible in making promotions. For example, the agency may refer their names for positions for which they are qualified ahead of others on any list of candidates under the promotion program; the agency may furnish the names of such qualified employees as a supplement to the group of candidates identified through the promotion program; or the agency may select them for promotion without consideration of other candidates.
(5) Promotion following downgrading. The general exception in subparagraph (1) above also permits promotion to a position at the level from which downgraded of: (a) an employee serving during the 2-year salary retention period; (b) an employee whose period of special salary retention has expired; and (c) an employee who would have benefited from the Salary Retention Act except for the fact that he was demoted to or from a position not subject to the Classification Act.
43. It is concluded that while the United States Army Electronics Command was authorized by the Department’s regulations to give special consideration to plaintiff for promotion to the vacant position of Supervisory Contract Specialist, GS-1102-13, such agency was entitled to accomplish the basic policy objective of such regulations, i.e., to select and appoint the best qualified available candidate to the position vacancy. It is further concluded that such agency did not abuse its discretion in selecting Mr. Varady over plaintiff, but that it acted reasonably under the facts and circumstances of this case.
44. Although plaintiff was detailed to the performance of the duties of the vacant position of Supervisory Contract Specialist, GS-1102-13, he was never promoted to that position, but retained his position grade of Contract Specialist, *526 GS-1102-12, throughout his employment by United States Army Electronics Command. It cannot be concluded that the adverse consideration of plaintiff was arbitrary, capricious or unsupported by substantial evidence, or that the agency’s failure to promote plaintiff was a violation of law or existing regulations. Because the filling of the position vacancy by the selection of Mr. Yarady as the best qualified candidate was an exercise of administrative discretion, not reviewable by the court, plaintiff is not entitled to recover back pay on the basis of the salary of the higher paid position to which he was never appointed. Tierney v. United States, 168 Ct. Cl. 77, 80 (1964) ; Dvorkin v. United States, 101 Ct. Cl. 296, 297, cert. denied, 323 U.S. 730 (1944); Coleman v. United States, 100 Ct. Cl. 41, 42 (1943).
45. This court has recently affirmed the correctness of the law stated in the above-cited oases and adhered to the decisions therein, emphasizing, however, that even as to discretionary acts an administrative agency might exceed its authority by making a determination which is arbitrary or capricious or not supported by evidence, and thus entitle an aggrieved claimant to relief by way of a judgment for salary unpaid. Chambers v. United States, 196 Ct. Cl. 186, 451 F. 2d 1045 (1971).
In such opinion and decision, the court overruled Hyman v. United States, 138 Ct. Cl. 836, 157 F. Supp. 164 (1957). In that case, plaintiff was discharged as a federal employee by a reduction in force. She held re-employment priority rights, entitling her to be hired before certain other persons should a position for which she was qualified become available. Such a position became available, but the pertinent agency refused to hire plaintiff. Thereafter, the final administrative determination of the matter was made on behalf of the Civil Service Commission by its Board of Appeals and Review, which ordered the agency to employ plaintiff with her appointment retroactive to the date when she should have been hired to fill the pertinent vacancy. This court refused to award back pay for the retroactive period, holding that plaintiff was not “entitled to be paid for a job to which she was not appointed and from which she was not, of necessity, removed.” 138 Ct. Cl. at 842,157 F. Supp. at 168.
*527 However, in overruling Hymcrn,, this court was obviously not ruling that the court will interfere with a reasonably exercised administrative function of a discretionary nature, but rather rested its action upon an accomplished final administrative determination that the claimant was entitled to be employed retroactively in the pertinent agency position. Also, in Chambers, the court based its decision on the fact that an administrative determination had been made, as conceded by defendant’s counsel, that the claimant had been denied employment in a particular position because of racial discrimination practiced with respect to such claimant. Thus, in both Chambers and Hymcm, as overruled, the court did not usurp the administrative function of making discretionary decisions relating to employment matters. It is my opinion that to afford relief to plaintiff in subject case would require just that, contrary to well-established law, and therefore it is concluded that both Chambers and Hyman, as overruled, are inapposite to the facts and circumstances of subject case.
CONCLUSION OK LAW
Based upon the foregoing findings of fact and conclusions which are adopted by the court and made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and judgment is entered dismissing plaintiff’s petition.