**Renetta M. PREDMORE**

v.

**Lew ALLEN, Lieutenant General, United States Air Force, Director National Security Agency, Fort George G. Meade, Maryland, and the United States of America.**

**Civ. No. 73–1036–K.**

United States District Court,
D. Maryland.

March 16, 1976.

---

FRANK A. KAUFMAN, District Judge.

In an opinion filed on June 20, 1975, this Court certified a class of plaintiffs pursuant to Federal Civil Rule 23(b)(2).[1] Thereafter, all members of that designated class were sent certain notice documents previously agreed upon as to form by counsel, which documents notified each of those class members of the pendency of this case and afforded to each such person the opportunity to obtain separate counsel of his or her own choosing. No class member has subsequently sought to be represented separately.[2] Thus, the substantive issues in this case appear ripe for resolution.

### WEINBERGER v. SALFI

Before any of the said notice documents were mailed to the class members, this Court asked for and received from counsel legal memoranda concerning the possible impact of the Supreme Court's opinion in *Weinberger v. Salfi,* 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975), upon this Court's prior indicated resolution, in its June 20, 1975 opinion, of class action issues. Thereafter, this Court determined that no changes in its said June 20, 1975 opinion were necessary or appropriate.

In *Salfi,* plaintiffs sought to maintain in a class action a challenge to certain duration-of-relationship requirements imposed upon widows and stepchildren by 42 U.S.C. §§ 416(c)(5) and 416(e)(2) and to obtain damages not only for the named plaintiffs but also for all class members. Those plaintiffs had not exhausted available administrative remedies. In *Salfi,* Mr. Justice Rehnquist wrote (422 U.S. at 763, 95 S.Ct. at 2466, 45 L.Ed.2d at 537) that 42 U.S.C. § 405(g) " * * * provided jurisdiction only as to the named appellees and not as to the unnamed members of the

Bruce J. Terris and Suellen T. Keiner, Andra N. Oakes, Washington, D. C., Champe C. McCulloch, Baltimore, Md., for plaintiff.

Jervis S. Finney, U. S. Atty., and Virginia S. Draper, Asst. U. S. Atty., Baltimore, Md., for defendants.

---

1. *See* pp. 1064–1067 of this Court's June 20, 1975 opinion.

2. Copies of the only letter received by this Court from any class member were forwarded by this Court to all counsel. That letter stated the approval of the writer of the named plaintiff's position.

class." (Footnote omitted.) Further, Mr. Justice Rehnquist stated (422 U.S. at 764, 95 S.Ct. at 2466, 45 L.Ed.2d at 538):

\* \* \* As to class members \* \* \* the complaint is deficient in that it contains no allegations that they have filed an application with the Secretary, much less that he has rendered any decision, final or otherwise, review of which is sought. The class thus cannot satisfy the requirements for jurisdiction under 42 U.S.C. § 405(g). Other sources of jurisdiction being foreclosed by § 405(h), the District Court was without jurisdiction over so much of the complaint as concerns the class, and it should have entered an appropriate order of dismissal.

In this case, however, the exhaustion rationale of *Salfi* is inapplicable. Jurisdiction exists herein pursuant, *inter alia*, to 42 U.S.C. §§ 2000e–5(f)(3) and 2000e–16(c), (d),[3] which contain none of the jurisdictional restrictions set forth in 42 U.S.C. §§ 405(g), (h).

## REVIEW OF DETERMINATIONS BY THE BOARD OF APPEALS AND REVIEW OF THE CIVIL SERVICE COMMISSION

Predmore, while primarily urging this Court to grant summary relief on the basis of findings contained in the administrative record and discussed in this Court's June 20, 1975 opinion, has secondarily contended that the 1972 Amendments to Title VII which permit federal employees to file civil actions in federal district courts entitle plaintiff to a *de novo* evidentiary hearing in this Court. Plaintiff reasons that private employees are entitled to *de novo* proceedings in federal court in the light of the Supreme Court's decisions in *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 60, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), and *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 799, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and

has pointed to various comments of congressional leaders and committees stating that the 1972 Amendments were intended to extend to federal employees the rights available to private employees. However, the legislative history of the 1972 Amendments is at best ambiguous on the issue at hand. *See* Comment, 123 U.Pa.L.Rev. 206, 208–09 (1974). Moreover, federal courts which have faced that issue have divided as to the import of those Amendments. *See Haire v. Calloway*, 526 F.2d 246 (8th Cir. 1975); *Hackley v. Roudebush*, 520 F.2d 108 (D.C.Cir.1975); *Caro v. Schultz*, 521 F.2d 1084 (7th Cir. 1975); *Chandler v. Johnson*, 515 F.2d 251 (9th Cir. 1975), *cert. granted*, 423 U.S. 821, 96 S.Ct. 34, 46 L.Ed.2d 37 (1975); *Sperling v. United States*, 515 F.2d 465, 474 n. 39 (3d Cir. 1975), and cases cited thereat, including *Salone v. United States*, 511 F.2d 902 (10th Cir. 1975).

The question of whether plaintiff is entitled to trial *de novo* in this Court and the corollary question of what precise standard should be applied to CSC administrative determinations need not, however, be resolved in this case. Herein, plaintiff is entitled to the grant of her motion for summary judgment under any of the several standards of review which the courts have employed. The BAR fully accepted the findings of Tecco that the statistics presented by plaintiff with regard to the pattern of promotions within NSA's G–6 office and the agency's disregard of its own promotional criteria made out a prima facie case of discrimination against Predmore and other G–6 female employees. The BAR rejected, however, Tecco's conclusion that Predmore was superior to Danahy, not on the basis that Tecco had incorrectly evaluated those two persons, but seemingly, at least in part, on the basis that any comparison of the two by Tecco was "speculative" since the two were never in direct competition. This Court disagrees. Tecco had before him

---

3. *See* pp. 1054–1055 of this Court's June 20, 1975 opinion.

detailed information about both Pred-more and Danahy and found Predmore superior to Danahy. Tecco also had be-fore him the opinion of Cole that Dana-hy was superior to Ward, one of the two other persons who along with Predmore were originally recommended by Huff-man before Huffman recommended only Ward. Tecco did not lose sight of the fact that, the second time round, Huff-man recommended only Ward.[4] But Tecco still concluded that Predmore was superior to Danahy after analyzing their records and abilities. In finding Tecco's comparison of Predmore and Danahy "speculative", it would appear that the BAR both disregarded the preponder-ance of available evidence and failed to observe the teachings of the Supreme Court concerning the burden of proof in a Title VII proceeding.

In *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 800, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), Mr. Justice Powell, in the course of addressing him-self to the questions of "the order and allocation of proof in a private, non-class-action challenging employment dis-crimination",[5] wrote (at 802, 93 S.Ct. at 1824):

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima fa-cie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the posi-tion remained open and the employer continued to seek applicants from per-sons of complainant's qualifications. * * *

The burden then must shift to the employer to articulate some legiti-mate, nondiscriminatory reason for the employee's rejection. * * *
[Footnotes omitted.]

Predmore made a prima facie showing that her non-promotion was the result of sex discrimination and further offered evidence of the superiority of her indi-vidual qualifications over those of Dana-hy, evidence which Tecco found convinc-ing. The record before Tecco contains no articulation of a "legitimate, nondis-criminatory reason for [Predmore's] rejection."

In a letter to this Court dated March 19, 1975 responding to a request made by this Court within the framework sug-gested by Mr. Justice Harlan in *Rosado v. Wyman,* 397 U.S. 397, 406–07, 90 S. Ct. 1207, 25 L.Ed.2d 442 (1970), this Court was informed as follows by the Office of the General Counsel of the Civil Service Commission concerning the standard of review used by the BAR "in deciding appeals from agency decisions on complaints of discrimination filed pursuant to 42 U.S.C. § 2000e–16 and 5 CFR Part 713":

> Decisions of this type are reached by the Board only after a review of the entire complaint file, including any representations made by the parties on appeal. A finding of discrimina-tion regarding the acts complained of will be made if such a conclusion is supported by the preponderance of the evidence. The purpose of the review of the file is not to determine whether previous actions in the matter (either the Complaints Examiner's findings and recommended decision or the agency's final decision) are supported by substantial evidence, but to review

---

4. At one point in his decision, Tecco wrote (Administrative Record at 48):
   * * * The agency has difficulty con-ceiving how the complainant could consider that she was discriminated against in view of the fact that she was not her division's first choice for promotion and her name did not go beyond her division chief, Mr. Huffman.

5. Although expressed in the context of a non-class-action proceeding, the teachings of *McDonnell* would appear fully applicable to Predmore's claim of employment discrimina-tion, at least insofar as Predmore's com-plaint relates solely to the individual circum-stances surrounding her own non-promotion.

the record afresh, to find if discrimination existed. In other words, the matter is given a *de novo* review by the Board.

It would appear that the BAR departed from that standard of review when the BAR failed to conclude that Predmore merited promotion ahead of Danahy. That decision by the BAR appears both "arbitrary" *and* unsupported by substantial evidence, since the record establishes by clear and convincing evidence that Predmore's non-promotion was the result of violations of affirmative action-type guidelines which NSA itself promulgated and was obliged to follow.[6] Thus, the BAR, at the very least, violated its own regulations requiring it to find discrimination if the latter is established by a preponderance of the evidence.

Additionally, in view of the BAR's failure to take issue with Examiner Tecco's finding that an unexplained statistical pattern of discrimination against women existed in the office in which those affirmative action regulations were violated (R. 57–66), and in view of the very strong evidence supporting Tecco's explicit conclusion (at R. 65) that

Predmore " * * * would have been promoted to GG–11 in the absence of *sex discrimination*" (emphasis supplied), this Court concludes that Predmore's non-promotion was, under the circumstances of this case, violative of Title VII's provisions and basic meaning, intent and purpose.

■ The BAR's finding that Predmore was not the subject of reprisal[7] as a result of her EEO complaint is also arbitrary and unsupported by substantial evidence. Even assuming that Cole's decisions to challenge the fairness of Raven's decisions to promote Predmore were most properly motivated, it appears uncontested and uncontestable that Cole's entreaties to Raven and other NSA officials in October and November, 1972 interfered with the processing of Predmore's complaint in violation of the terms of 5 C.F.R. § 713.261(a).[8]

■ The BAR's conclusion that Cole's access to Predmore's investigative file was not illegal would, however, appear supported by the evidence. The fact of Cole's access to such files has not been disputed and the only question for this Court to determine is the legal conse-

---

6. *See Morton v. Ruiz*, 415 U.S. 199, 235, 94 S.Ct. 1055, 39 L.Ed.2d 270 (1974); *Vitarelli v. Seaton*, 359 U.S. 535, 539–40, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); *Drummond v. Froehlke*, 460 F.2d 264, 265 (4th Cir. 1972); *Bluth v. Laird*, 435 F.2d 1065, 1071 (4th Cir. 1970); *United States v. Heffner*, 420 F.2d 809, 811–13 (4th Cir. 1970); *Francis v. Davidson*, 340 F.Supp. 351, 365–66 (D. Md.), *aff'd*, 409 U.S. 904, 93 S.Ct. 223, 34 L.Ed.2d 168 (1972).

7. The BAR apparently accepted Tecco's conclusion that Cole's October 12, 1972 meeting with Predmore was coercive but as noted *supra* at p. 1063 of this Court's June 20, 1975 opinion, declined to review the adequacy of the reprimand issued to Cole on December 29, 1972.

8. *See* p. 1060 *supra* of this Court's June 20, 1975 opinion. 5 C.F.R. § 713.261(a), upon which Examiner Tecco relied at the February 1973 hearing, was first promulgated on October 21, 1972, and thus may have been inapplicable to some of the events in question.

Nonetheless, the substance of 5 C.F.R. § 713.261(a) was formerly contained in 5 C.F.R. § 713.214(b), which was promulgated on March 19, 1969, and which provided:

(b) *Presentation of complaint.* At any stage in the presentation of a complaint, including the counseling stage under § 713.213, the complainant shall be free from restraint, interference, coercion, discrimination, or reprisal and shall have the right to be accompanied, represented, and advised by a representative of his own choosing. If the complainant is an employee of the agency, he shall have a reasonable amount of official time to present his complaint if he is otherwise in an active duty status. If the complainant is an employee of the agency and he designates another employee of the agency as his representative, the representative shall be free from restraint, interference, coercion, discrimination, or reprisal, and shall have a reasonable amount of official time, if he is otherwise in an active duty status, to present the complaint.

quence of that fact. The terms of NSA regulations applicable at the time Cole gained access to the files would seemingly indicate that such access, although perhaps unwise, was not proscribed.[9]

The BAR's rejection of allegations of improper agency interference by such NSA officials as Zaslow and Peksa would also appear well-founded. As the BAR observed, no provision in agency or Civil Service regulations seemingly proscribes investigatory work conducted by such officials. Nor has plaintiff provided to this Court any authority indicating that such actions contravened the mandates of any applicable statute, regulation or administrative practice or any reason why such investigation in and of itself is either necessarily coercive or constitutes inevitably a bar to appropriate enforcement of equal opportunity policies.

In view of this Court's conclusion that the complained-of actions and/or inactions of NSA officials were in violation of NSA's own promotional guidelines and CSC regulations concerning the processing of EEO grievances, and of Title VII itself, it is unnecessary for this Court to determine whether those violations contravene Executive Order 11478, and other anti-discrimination statutes cited by plaintiff. But the same is not true of Predmore's claim to entitlement of the award of back pay. That issue remains to be faced herein.

■ In *Albemarle Paper Company v. Moody*, 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280 (1975) Mr. Justice Stewart wrote (422 U.S. 419, 95 S.Ct. at 2372, 45 L.Ed.2d at 297–98):

The "make whole" purpose of Title VII is made evident by the legislative history. The backpay provision was expressly modeled on the backpay provision of the National Labor Relations Act. Under that Act, "[m]aking the workers whole for losses suffered on account of an unfair labor practice is part of the vindication of the public policy which the Board enforces." *Phelps Dodge Corp. v. Labor Board,* 313 U.S. 117, 197 [61 S.Ct. 845, 854, 85 L.Ed. 1271]. See also *Nathanson v. Labor Board,* 344 U.S. 25, 27 [73 S. Ct. 80, 82, 97 L.Ed. 23]; *NLRB v. J. H. Rutter-Rex Mfg. Co.,* 396 U.S. 258, 263 [90 S.Ct. 417, 420, 24 L.Ed.2d 405]. We may assume that Congress was aware that the Board, since its inception, has awarded backpay as a matter of course—not randomly or in the exercise of a standardless discretion, and not merely where employer violations are peculiarly deliberate, egregious or inexcusable.

\*　　\*　　\*　　\*　　\*　　\*

---

9. In finding Cole's access to the files improper, Tecco relied upon 5 C.F.R. § 713.-217(a), which provided, in February 1973:

(a) The agency shall provide an opportunity for adjustment of the complaint on an informal basis after the complainant has reviewed the investigative file. For this purpose, the agency shall furnish the complainant or his representative a copy of the investigative file promptly after receiving it from the investigator, and provide opportunity for the complainant to discuss the investigative file with appropriate officials. If an adjustment of the complaint is arrived at, the terms of the adjustment shall be reduced to writing and made part of the complaint file, with a copy of the terms of the adjustment provided the complainant. If the agency does not carry out, or rescinds, any action specified by the terms of the adjustment

for any reason not attributable to acts or conduct of the complainant, the agency shall, upon the complainant's written request, reinstate the complaint for further processing from the point processing ceased under the terms of the adjustment. That regulation would seem to support Tecco's conclusion only by a stretch of a negative pregnant approach. The same is at least as equally true of the predecessor of that regulation, which until October 21, 1972 provided:

(a) The agency shall provide an opportunity for adjustment of the complaint on an informal basis after the complainant has reviewed the investigative file. If an adjustment of the complaint is arrived at, the terms of the adjustment shall be reduced to writing and made part of the complaint file, with a copy of the terms of the adjustment provided the complainant.

It follows that, given a finding of unlawful discrimination, backpay should be denied only for reasons which, if applied generally, would not frustrate the central statutory purposes of eradicating discrimination throughout the economy and making persons whole for injuries suffered through past discrimination. * * * [Footnotes omitted.]¹⁰

Accordingly, in the absence of any demonstrated or discernible reason why she should not receive an award of back pay, Predmore is entitled to such an award pursuant to Title VII.

Predmore has also contended herein that she is entitled to the award of back pay pursuant to the Back Pay Act, 5 U.S.C. § 5596, which provides, in pertinent part, that an employee is entitled to back pay when "on the basis of an administrative determination or a timely appeal ' *. * * [such employee] is found by appropriate authority under applicable law or regulation to have undergone an unjustified or unwarranted personnel action" which resulted in a "withdrawal or reduction" of pay.¹¹ In the light of the Supreme Court's recent decision in *United States v. Testan,* —— U.S. ——, 96 S.Ct. 948, 47 L.Ed.2d 114, 44 U.S.L.W. 4245 (1976), that contention appears without merit. In *Testan,* in which plaintiffs sought an award of back pay on the grounds that their employing agency had wrongfully classified their civil service positions, Mr. Justice Blackmun wrote (at ——, 96 S.Ct. at 956, 47 L.Ed.2d at 125, 44 U.S.L.W. at 4249–50):

C. The Back Pay Act. This statute, which the Court of Claims found unnecessary to evaluate, in arriving at its decision, does not apply, in our view, to wrongful classification claims.

The Act does authorize retroactive recovery of wages whenever a federal employee has "undergone an unjustified or unwarranted personnel action that has resulted in the withdrawal or reduction of all or a part" of the compensation to which the employee is otherwise entitled. 5 U.S.C. § 5596 (b). The statute's language was intended to provide a monetary remedy for wrongful reductions in grade, removals, and suspensions, and "other unwarranted or unjustified actions affecting pay or allowances [that] could occur in the course of reassignments and change from full-time to part-time work." S.Rep.No.1062, 89th Cong., 2d Sess., 3 (1966), U.S.Code Cong. & Admin.News 1966, pp. 2097, 2099. The Commission consistently has so construed the Back Pay Act. See 5 CFR § 550.803(e) (1974). So has the Court of Claims. See *Desmond v. United States,* 201 Ct.Cl. 507, 527 (1973).

For many years federal personnel actions were viewed as entirely discretionary and therefore not subject to any judicial review, and in the absence of a statute eliminating that discretion, courts refused to intervene where an employee claimed that he had been wrongfully discharged. Compare *Keim v. United States,* 177 U.S. 290, 293–296 [20 S.Ct. 574, 575–576, 44 L.Ed. 744] (1900), with *United States v. Wickersham, supra,* 201 U.S. 390, [26 S.Ct. 469, 50 L.Ed. 798]. See *Sampson v. Murray,* 415 U.S. 61, 69–70 [94 S.Ct. 937, 942–943, 39 L.Ed.2d 166] (1974). Relief was invariably denied where the claim was that the employee had been denied a promotion on improper grounds. See *Keim v. United States,* 177 U.S., at 296 [20 S.Ct., at 576]; *United States*

---

10. The Fourth Circuit had, prior to the Supreme Court's opinion in *Albemarle,* characterized back pay in a fair employment practices case as no more than "compensation for the tangible economic loss resulting from an unfair employment practices." *Robinson v. Lorillard Corp.,* 444 F.2d 791, 804 (4th Cir.) (Soberoff, J.), *cert. dismissed,* 404 U.S. 1006, 92 S.Ct. 573, 30 L.Ed.2d 655 (1971)...

11. *See* this Court's June 20, 1975 opinion, *supra* at n. 8.

*v. McLean,* 95 U.S. [750], at 753 [24 L.Ed. 579].

Congress, of course, now has provided specifically in the Lloyd-LaFolette Act, 5 U.S.C. § 7501, for administrative review of a claim of wrongful adverse action, and in the Back Pay Act for the award of money damages for a wrongful deprivation of pay. But federal agencies continue to have discretion in determining most matters relating to the terms and conditions of federal employment. One continuing aspect of this is the rule, mentioned above, that the federal employee is entitled to receive only the salary of the position to which he was appointed, even though he may have performed the duties of another position or claims that he should have been placed in a higher grade. Congress did not override this rule, or depart from it, with its enactment of the Back Pay Act. It could easily have so provided had that been its intention.[8]

8. In 1972, Congress made the Equal Employment Opportunity Act applicable to federal employees. 86 Stat. 103, 42 U.S.C. § 2000e *et seq.* The nature of that explicit waiver of sovereign immunity is presently before the Court. See *Brown v. General Services Administration,* 507 F.2d 1300 (CA2 1974), cert. granted, 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 (1975).

In support of their contention that the Back Pay Act authorizes a claim in the situation here presented, respondents and *amici* cite only two cases other than the Court of Claims cases whose reasoning is directly in question here. Neither case supports the proposition. *Walker v. Kleindienst,* 357 F.Supp. 749 (DC 1973) (cited by respondents), addressed the issue of the retroactivity of the 1972 amendments to the Equal Employment Opportunity Act. *Ainsworth v. United States,* 399 F.2d 176, 185 Ct.Cl. 110 (1968) (cited by *amici*), involved the rights of an employee who had been discharged and subsequently reinstated.

Neither of these cases provides a reason for doubting that the Back Pay Act, as its words so clearly indicate, was intended to grant a monetary cause of action only to those who were subjected to a reduction in their duly appointed emoluments or position.

Predmore has not been "subjected to a reduction in" her "duly appointed emoluments or position". Rather she seeks retroactively the increased compensation of a position of higher grade. Accordingly, an award of back pay pursuant to the provisions of the Back Pay Act is not appropriate in this case. However, for the reasons stated *supra,* such an award of back pay is both appropriate and required pursuant to the provisions of Title VII.

In addition to seeking back pay, Predmore has sought certain types of equitable relief herein for herself and members of the class she represents, and in connection therewith, has asked that any future discrimination by the agency relating to sex be prohibited and that all supervisory personnel be made aware of the promotional criteria contained in PML. As to the latter, distribution of it to such personnel took place on January 3, 1973 and May 21, 1973. That document remains in force and effect as of this date as agency policy. This Court is confident that NSA will not in the future disregard standards which it has itself agreed are legally required and which are currently in force and effect within its midst.[12] As to plaintiff's request that this Court specifically reprimand Cole, plaintiff's counsel has seemingly not pressed that request.

12. It is to be noted that NSA Director Phillips, in a communication to all of NSA's employees dated January 1, 1973, called attention to the agency's commitment to an "Affirmative Action" concept insofar as equal opportunities for minority and female personnel were concerned. Also, in a memorandum authored by Peter F. Newton, Special Assistant to the Director for Equal Employment Opportunity of NSA, issued on November 13, 1973, NSA supervisors were specifically requested to "insure" that women and minority employees were not overlooked in the promotion process.

Nor would the grant of such relief at this time appear required.

Predmore has also complained that NSA promotional panels do not document the bases underlying their promotional decisions and should be required by this Court so to do in the future. While such a procedure might well be advisable, the administrative process in this case, culminating in the full and thorough opinions and decisions of Examiner Tecco and the BAR, would not appear to compel procedural change. The same, however, is not true with regard to Predmore's request that women, who apparently have not been members of promotional panels, should be placed thereon in appropriate number. Both Examiner Tecco and the BAR commented upon the absence of women on NSA's promotional panels. Tecco specifically recommended that "steps [be taken] to insure that women serve as members of these panels" (R. 74). That recommendation should be augmented without delay.

## CONCLUSION

Counsel shall confer and shall submit their proposals with regard to a Decree in this case, in accordance with a schedule which this Court has established with counsel.