Wellington MITCHELL, Plaintiff,

v.

**SECRETARY OF COMMERCE, Defendant.**

Civ. No. 82–3020 (CRR).

United States District Court, District of Columbia.

July 17, 1989.

Joseph M. Sellers, Washington Lawyers' Committee for Civil Rights Under Law, and Barry J. Reingold, Perkins Coie, Washington, D.C., for plaintiff.

Jay B. Stephens, U.S. Atty. for District of Columbia, John D. Bates and George P. Williams, Asst. U.S. Attys., for defendant.

## ORDER

CHARLES R. RICHEY, District Judge.

The plaintiff Mitchell is the prevailing party in a Title VII action. In its opinion dated September 2, 1988, the Court found, following trial, that the Department of Commerce (the "Department") had discriminated against Mitchell on the basis of his race in denying him a promotion. The Court retroactively awarded Mitchell the promotion, along with back pay.

Mitchell subsequently moved for additional relief, including the entry of a permanent injunction against further acts of discrimination, and interest on the back pay award.[1] Mitchell's entitlement to this additional relief has been fully briefed by the parties, and is now ripe for decision. The Court has determined to grant the requested injunction, but will deny Mitchell's request for interest on the award of back pay.

### Injunctive Relief

In its Opinion of September 2, 1988, the Court initially denied Mitchell's request for injunctive relief. That decision, however,

---

1. Mitchell sought other forms of additional relief, but the permanent injunction and the inter-est award are the only issues as to which agreement has not been reached among the parties.

was predicated upon the understanding that Mitchell was soon to retire from the Department, and that an injunction would therefore constitute an empty gesture.

■ The Court is now informed that Mitchell, in fact, has not retired, and that he has no intention of retiring anytime soon. Further, the Court is informed that the Department's handling of Mitchell's recent sick leave [2] suggests that the Department may resent Mitchell's willingness to successfully litigate his claims. Under these circumstances, the entry of a permanent injunction against future acts of discrimination or retaliation against Mitchell would appear to be prudent. The Court is concerned that, absent such an injunction, the Department's mistreatment of Mitchell will continue, albeit in subtle ways that may be beyond immediate judicial supervision. The Department shall be permanently enjoined, from the date hereof, from engaging in any acts or omissions on account of Mitchell's race, or in reprisal for Mitchell's having instituted this or any other action.

### Interest on Award of Back Pay

■ The Court initially awarded Mitchell back pay in an amount equal to the difference between what he has actually earned and what he would have earned had he received the promotion at issue. Mitchell now seeks interest on that award. Because the Court is of the view that, under the circumstances of this case, such an award would contravene the federal government's sovereign immunity, and that Congress has not expressly waived this sovereign immunity in either Title VII itself or the Back Pay Act, 5 U.S.C. § 5596, Mitchell's request shall be denied.

The Department discriminated against Mitchell in failing to promote him, because of his race, to a position for which he had applied. Accordingly, as it is specifically authorized to do, the Court awarded Mitch-

ell back pay under §§ 717(d) and 706(g) of Title VII, 42 U.S.C. §§ 2000e–16(d) and 2000e–5(g).[3] As Mitchell concedes, however, Title VII itself nowhere authorizes the award of interest, whether on back pay or any other form of monetary relief. *See generally, Loeffler v. Frank,* — U.S. ——, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988); *Library of Congress v. Shaw,* 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986). Absent such express statutory authorization, Title VII cannot be read to represent an intentional waiver by Congress of the sovereign immunity that otherwise protects the federal government from interest awards of any kind. *See Shaw,* 106 S.Ct. at 2961 ("In the absence of express congressional consent to the award of interest separate from a general waiver of immunity to suit, the United States is immune from an interest award.").

That is not to say, however, that Congress may not expressly waive sovereign immunity as to an interest award under Title VII through other legislative enactments. For instance, in *Loeffler,* the Supreme Court determined that because the Postal Reorganization Act, 39 U.S.C. § 401(1) (the "PRA), allows the Postal Service to "sue and be sued" as a private person, it must be treated as a private person for purposes of an action against it under Title VII. 108 S.Ct. at 1970. And, because interest may be assessed against a private defendant under § 706(g) of Title VII, *see, e.g., Green v. USX Corp.,* 843 F.2d 1511, 1530 (3rd Cir.1988), the Court construed the PRA's "sue and be sued" clause as representing an express waiver of the sovereign immunity that would have otherwise have barred the assessment of interest against the Postal Service in a Title VII suit.

Mitchell argues that the Back Pay Act serves the same purpose here as the PRA's "sue and be sued" clause served in *Loeffler,* i.e., that it waives the sovereign immunity that would otherwise protect the De-

---

**2.** Necessitated by an automobile accident during the summer of 1988.

**3.** Section 706(g) specifically permits a court to "order such affirmative action as may be appro-

priate ... includ[ing] ... back pay ..., or any other equitable relief as the court deems appropriate." 42 U.S.C. § 2000e–5(g).

partment against an interest award. Although the Court is prepared to accept this as a general proposition,[4] it cannot agree that, in the context of this case—which involves a failure to promote—the Back Pay Act has any legitimate application.

As always, and particularly so when waivers of sovereign immunity are at issue, the Court begins with the statutory language. The Back Pay Act grants federal employees the right to receive back pay, and interest thereon, when they have been affected by "an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of the pay, allowances or differentials of the employee." 5 U.S.C. § 5596(b)(1). Further, the Back Pay Act includes within the class of "personnel actions" that will trigger its provisions "the ommission or failure to take an action or confer a benefit." § 5596(b)(4). Mitchell contends that the latter-quoted language is sufficiently broad to cover a failure to promote of the type at issue here; accordingly, he contends that the Back Pay Act should be read to authorize an award of back pay and interest under the circumstances of this case, and thus to have waived the sovereign immunity of the federal government as to an award of interest.

The Court cannot agree. The language of the statute controls.[5] And the express terms of the Back Pay Act provide that it shall be effective *only* when the "unwarranted personnel action" being challenged results in the "withdrawal or reduction" of an employee's compensation. The Court simply cannot conclude that the failure to pronote an employee, even where that failure is wrongful, as it was here, results in the "withdrawal or reduction" of an employee's compensation. *United States v. Testan*, 424 U.S. 392, 406, 96 S.Ct. 948, 957, 47 L.Ed.2d 114 (1976); *Donovan v. United States*, 580 F.2d 1203, 1207–08 (3d Cir.1978); *McNutt v. Hills*, 426 F.Supp. 990, 1002 (D.D.C.1977); *Predmore v. Allen*, 407 F.Supp. 1067, 1072–74 (D.Md. 1976).

Mitchell places great reliance upon the amendments to the Back Pay Act brought by the Civil Service Reform Act of 1978 (the "CSRA"). These amendments, *inter alia*, expanded the definition of "personnel action" to include the "omission or failure to take an action or confer a benefit." Yet, while these amendments arguably brought an employer's unlawful failure to promote within the definition, they did not, at the same time, dispense with the congressionally-imposed requirement that the "personnel action" cause a "withdrawal or reduction" in the employee's compensation. This fact, in the Court's view, is fatal to Mitchell's argument.

In amending the Back Pay Act, Congress must be presumed to have understood the rationale of cases such as *Testan, Donovan* and *Predmore*. Those cases rested their holdings, not on the types of "personnel actions" at issue, but on the fact that those actions—misclassifications and failures to promote—did not result in the type of *effect* required by the statute. *See Testan*, 424 U.S. at 407, 96 S.Ct. at 957 ("[T]he Back Pay Act, as its words so clearly indicate, was intended to grant a monetary cause of action only to those who were subjected to a *reduction* in their duly appointed emoluments or position.") (emphasis added); *Donovan*, 580 F.2d at 1207 ("The unwarranted failure timely to promote plaintiff in accordance with Army

---

**4.** If accurate, the notion that the Back Pay Act waives the federal government's sovereign immunity against interest on back pay would seem to dispose of the dispute in *Loeffler*, which arose over precisely this issue. However, the provision for interest under the Back Pay Act, 5 U.S.C. § 5596(b)(2)(A), was added in 1987, and thus predates the lower court's decisions in *Loeffler*. Accordingly, the effect of the Back Pay Act was not before the Supreme Court.

**5.** The Court must be chary of finding waivers of sovereign immunity where none exist, for "there

can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute ... to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms." *United States v. New York Rayon Importing Co.*, 329 U.S. 654, 659, 67 S.Ct. 601, 604, 91 L.Ed. 577 (1947). *See also Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685–86, 103 S.Ct. 3274, 3278, 77 L.Ed.2d 938 (1983) (a waiver cannot extend "beyond what the language requires").

regulations, though a wrongful act, is not the type of personnel action calling for back pay under the Back Pay Act, for the action has not caused plaintiff to suffer any reduction in grade but has only delayed his advancement to a higher level."); *Predmore*, 407 F.Supp. at 1074 ("Predmore [the victim of a failure to promote on the basis of her sex] has not been 'subjected to a reduction in' her 'duly appointed emoluments or position'.) (quoting *Testan*). Congressional intent can be inferred most clearly from congressional action, and the action taken by Congress in 1978 in no way undermined the rationale of those cases. This fact must be viewed in the light of the Court's duty to construe alleged waivers of sovereign immunity strictly in favor of the sovereign. *See Shaw*, 106 S.Ct. at 2963. The Court cannot conclude that, with respect to an unlawful failure to promote, the Back Pay Act effects a waiver of the sovereign immunity that would otherwise obtain, and that it therefore permits the assessment of interest on an award of back pay under Title VII. Mitchell's request for such interest shall be, and hereby is, denied.[6]

SO ORDERED.

---

**6.** The Court concedes that, as Mitchell points out, several administrative decisions are to the contrary. Moreover, the Court recognizes that the decisions in *Parker v. Burnley*, 693 F.Supp. 1138 (N.D.Ga.1988) and *Rollins v. Bennett*, 48 FEP Cases 1172 (W.D.Wash.1988) are inconsistent with this decision. Nevertheless, the Court respectfully feels compelled to part ways with those who have decided this question, concededly a difficult one, in a different way.