James E. BROWN, Appellant,

v.

SECRETARY OF the ARMY.

Wellington MITCHELL, Appellant,

v.

SECRETARY OF COMMERCE.

Nos. 89–5371, 89–5375.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1990.

Decided Nov. 9, 1990.

Joseph M. Sellers, with whom John R. Erickson, Washington, D.C. was on the brief, for appellant, in No. 89–5371.

Joseph M. Sellers, with whom Barry J. Reingold, Washington, D.C. was on the brief, for appellant, in No. 89–5375.

William J. Dempster, Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., John D. Bates, and R. Craig Lawrence, Asst. U.S. Attys., Washington, D.C. were on the brief, for appellee, in No. 89–5371 and No. 89–5375. Edith S. Marshall, Washington, D.C. also entered an appearance for appellee.

John Townsend Rich and Elizabeth Runyan Geise, Washington, D.C. were on the brief for amici curiae in support of appellants.

Before: WALD, Chief Judge, RUTH BADER GINSBURG, and SENTELLE, Circuit Judges.

Opinion for the Court filed by Circuit Judge RUTH BADER GINSBURG.

Dissenting opinion filed by Chief Judge WALD.

RUTH BADER GINSBURG, Circuit Judge:

In these consolidated appeals, federal employees James Brown and Wellington Mitchell contest district court rulings denying prejudgment interest on the back pay awarded them as successful litigants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e. On May 11, 1989, the district court awarded Brown, a black civilian employee of the United States Army, promotions retroactive to 1975 and corresponding back pay. *See Brown v. Marsh*, 713 F.Supp. 20 (D.D.C.1989). On July 17, 1989, the same judge awarded Mitchell, a black Hispanic employee of the National Weather Service, a promotion retroactive to 1980 and attendant back pay. *See Mitchell v. Secretary of Commerce*, 715 F.Supp. 409 (D.D.C.1989).

In both cases, the district court was prepared to accept as manifest in the Back

Pay Act's interest prescription, 5 U.S.C. § 5596(b)(2), a waiver of the government's immunity from prejudgment interest that encompassed, inter alia, Title VII back pay awards. The court further observed, however, that the Back Pay Act reaches only unlawful personnel actions that have resulted in a "withdrawal or reduction" of pay. The wrongfully withheld promotions at issue, the district court concluded, did not "withdraw" or "reduce" the complainants' pay. Hence, the court held, Congress had not provided for an immunity waiver of sufficient sweep to cover prejudgment interest in Brown's and Mitchell's cases. *See Brown*, 713 F.Supp. at 25; *Mitchell*, 715 F.Supp. at 411. We agree substantially with the district court's reasoning and result and accordingly affirm its judgments in the two cases.

## I.

■ The government principally argues in this court that successful Title VII claimants in the federal sector simply do not qualify for prejudgment interest because (1) Title VII itself does not contain the requisite sovereign immunity waiver, and (2) the Back Pay Act, 5 U.S.C. § 5596, which does contain an immunity waiver encompassing interest, does not complement Title VII relief. In accord with the district court, and for the reasons set out below, we are unpersuaded by the government's broad argument that "[t]he Back Pay Act does not apply to [Title VII] discrimination claims." *See* Brief for Appellees at 10.

■ It is undisputed that, under current doctrine binding the lower courts, sovereign immunity shields the federal government from prejudgment interest on damage awards absent an express statutory waiver. Title VII itself, the Supreme Court held in *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), does not provide for waiver of the government's immunity from interest awards. In *Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), however, the Court concluded that the requisite express waiver could be supplied by a separate statute. Prejudgment interest could be awarded in a Title VII suit against the Postal Service, the Court held, based on the provision of the 1970 Postal Reorganization Act, 39 U.S.C. § 401(1), that the Postal Service may "sue and be sued." *See Loeffler*, 486 U.S. at 555–59, 108 S.Ct. at 1969–71.

The government offers no convincing reason why the Back Pay Act does not supply the immunity waiver prescription absent in Title VII, just as the Postal Reorganization Act does. Enacted in 1966, the Back Pay Act provides that a federal employee is entitled to back pay if he or she "is found by appropriate authority under applicable law, rule, regulation, or collective bargaining agreement, to have been affected by an unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction of all or part of [his or her] pay, allowances, or differentials." *See* 5 U.S.C. § 5596(b)(1). In 1987, the Act was amended to state that "an amount payable [under the Act] shall be payable with interest." Pub.L. No. 100–202, 101 Stat. 1329 (codified at 5 U.S.C. § 5596(b)(2)).

In the cases successfully pursued by Brown and Mitchell, an "appropriate authority" (the district court) has found that the challenged personnel actions were "unjustified or unwarranted" under applicable law (Title VII). Consequently, *if* appellants meet the remaining Back Pay Act terms, sovereign immunity—as the district court thought "manifest," *Brown*, 713 F.Supp. at 25—would not appear to block the assessment of prejudgment interest on their back pay awards. *Accord Smith v. Brady*, 744 F.Supp. 925, 927–28 (N.D.Cal. 1990).

The government maintains, however, that Congress confined Title VII and the Back Pay Act to totally separate spheres. Turning first to the Back Pay Act, we find in its text no hint of an exclusion of, or exemption for, federal sector Title VII adjudications. The Act applies to any "employee of an agency" and exempts only the Tennessee Valley Authority and its employees. *See* 5 U.S.C. §§ 5596(a), (c). Relevant

too are the regulations prescribed by the Office of Personnel Management (OPM) to carry out the Back Pay Act. Those regulations define an "appropriate authority" as "an entity having authority in the case at hand to correct or direct the correction of an unjustified or unwarranted personnel action," and specifically include, inter alia, the Equal Employment Opportunity Commission (EEOC). *See* 5 C.F.R. § 550.803 (1990). The regulations further provide that the Back Pay Act's requirement for a "timely appeal" is met when "[a]n employee or an employee's personal representative initiates an appeal or grievance ...; [including] a discrimination complaint...." 5 C.F.R. § 550.804(b). The references in the OPM regulations to discrimination complaints and to the EEOC, whose sole function is to enforce Title VII, strongly suggest OPM's assumption that the Back Pay Act is appropriately applied in tandem with Title VII.

The Back Pay Act was enacted six years before the protections of Title VII were extended to federal employees; the Act's legislative history is therefore uninformative on the relationship of the two measures. Nor does legislative history on the 1987 amendment to the Act, which waives sovereign immunity for interest awards, specifically address Title VII claims. If the two measures are to be held rigidly separate rather than harmonized, the instruction to do so must be ascribed to Title VII, and that is indeed the government's main theme.

The government relies on two Supreme Court decisions, *Brown v. General Services Administration*, 425 U.S. 820, 96 S.Ct. 1961, 48 L.Ed.2d 402 (1976), and *Great American Federal Savings & Loan Ass'n v. Novotny*, 442 U.S. 366, 99 S.Ct. 2345, 60 L.Ed.2d 957 (1979). Those decisions, the government urges, indicate that Congress intended the remedial provisions of Title VII to provide the exclusive framework under which a federal employee may obtain relief for employment discrimination. Unlike the self-standing statutes at issue in *Brown* and *Novotny*, however, the Back Pay Act is an auxiliary measure that leaves the structural framework of Title VII intact and fully applicable. Thus, neither decision appears to us to impede the application of the Back Pay Act to Title VII adjudications.

In *Brown v. GSA*, a government employee alleging illegal racial discrimination sued under section 717 of Title VII and under 42 U.S.C. § 1981. The suit was untimely under the explicit provisions of Title VII, but the plaintiff argued that his court complaint could nonetheless be adjudicated under section 1981. The Supreme Court held that the suit was properly dismissed because Title VII, "with its rigorous administrative exhaustion requirements and time limitations," 425 U.S. at 833, 96 S.Ct. at 1968, preempted other claims for relief and provided "the exclusive judicial remedy for claims of discrimination in federal employment." 425 U.S. at 835, 96 S.Ct. at 1969.

In *Novotny*, the complainant alleged that he was injured by a conspiracy to violate Title VII; the alleged conspiracy, he maintained, deprived him of "the equal protection of the laws, or of equal privileges and immunities under the laws" within the meaning of 42 U.S.C. § 1985(3). The Court held that the "deprivation of a right created by Title VII cannot be the basis for a cause of action under § 1985(3)." 442 U.S. at 378, 99 S.Ct. at 2352. Citing *Brown v. GSA*, the Court emphasized that "[i]f a violation of Title VII could be asserted through § 1985(3)," a complainant "could completely bypass the administrative process" and evade "the short and precise time limitations of Title VII." *Id.* at 375–76, 99 S.Ct. at 2351.

In contrast to 42 U.S.C. §§ 1981 and 1985(3), the statutes at issue in *Brown* and *Novotny*, the Back Pay Act creates no alternative cause of action that circumvents Title VII's precise time frames and detailed administrative procedures. The Act is an auxiliary measure that operates only at the relief stage. It furnishes relief only after an "appropriate authority" finds that, under some other provision of law, a federal employee has suffered an "unjustified or unwarranted personnel action." Thus, a Title VII plaintiff may not recover anything under the Back Pay Act unless and

until he or she has complied with the exacting procedural requirements of Title VII and succeeded on the merits.

*Brown* and *Novotny* squarely hold that a remedial framework inconsistent with the structure of Title VII is preempted by that Title. We are aware of but one such inconsistency between the remedies authorized by Title VII and those authorized by the Back Pay Act: Title VII limits recovery to back pay accruing within two years prior to the filing of the administrative charge. *See* 42 U.S.C. § 2000–5(g). This difference, however, is easily accommodated. The specific limitation of Title VII must prevail over the more generous term of the Back Pay Act.

In sum, we find scant support for the government's overarching argument that (1) the Back Pay Act does not apply at all to discrimination claims, so that (2) the Act's waiver of sovereign immunity does not authorize prejudgment interest on back pay awards to any successful Title VII claimants in the federal sector. On the contrary, our review persuades us that the two measures, Title VII and the Back Pay Act, are most sensibly read as complementary. We thus accept, as did the district court, the position that the Back Pay Act, to the extent of its coverage, waives the federal government's sovereign immunity against prejudgment interest on Title VII back pay awards, and we turn to the more difficult and ultimately dispositive question: Does Back Pay Act coverage encompass unlawfully discriminatory promotion denials of the kind involved in appellants' cases?

## II.

 As we just observed, our conclusion that the Back Pay Act applies to back pay awards under Title VII does not resolve these appeals. The Back Pay Act has its own requirements that must be satisfied before a plaintiff may recover back pay. Specifically, a federal employee seeking to recover under the Act must be found "to have been affected by an unjustified or unwarranted personnel action *which has resulted in the withdrawal or reduction of all or part of [his or her compensation]*." 5 U.S.C. § 5596(b)(1) (emphasis added).

In the decision that marks our path, *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), the Supreme Court held that Back Pay Act relief is available only to compensate for a reduction in pay or a decrease in grade. The Court said: "[T]he Back Pay Act, as its words so clearly indicate, was intended to grant a monetary cause of action only to those who were subjected to a reduction in their duly appointed emoluments or position." *Id.* at 407, 96 S.Ct. at 957.

The complainants in *Testan* sought reclassification of their positions to a higher grade, but the Court's rationale is not confined to that category of upgrade. Under the *Testan* Court's reading of the Back Pay Act, retrospective recovery simply was not provided for the employee who "had been denied a promotion on improper grounds," and so claimed that "he should have been placed in a higher grade." *Id.* at 406, 96 S.Ct. at 957. In holding that *Testan* precludes application of the Back Pay Act to afford compensation to appellants for the promotions wrongfully denied them, the district court aligned itself with other lower courts. *See, e.g., Donovan v. United States,* 580 F.2d 1203, 1207–08 (3d Cir. 1978); *Hearn v. Turnage,* 739 F.Supp. 1312, 1313 (E.D.Wis.1990); *Predmore v. Allen,* 407 F.Supp. 1067, 1072–74 (D.Md. 1976); *cf. Lee v. Brady,* 741 F.Supp. 990, 991 & n. 1 (D.D.C.1990) (awarding prejudgment interest for an unlawful termination and specifically distinguishing unlawful failures to promote).[1]

Appellants rely most heavily on a statutory change that postdated *Testan:* The Civil Service Reform Act of 1978 amended the Back Pay Act to include within the definition of covered "personnel action[s]," "the omission or failure to take an action or

---

**1.** The court in the instant cases noted its disagreement with the decisions in *Parker v. Burnley,* 693 F.Supp. 1138 (N.D.Ga.1988), and *Rollins* *v. Bennett,* 48 Fair Empl.Prac.Cas. (BNA) 1172 (W.D.Wash.1988). *See Brown,* 713 F.Supp. at 25 n. 13; *Mitchell,* 715 F.Supp. at 412 n. 6.

confer a benefit." Pub.L. No. 95–454, § 702, 92 Stat. 1111, 1216 (1978) (codified at 5 U.S.C. § 5596(b)(4)). But the 1978 amendment must be read in the context of the Act as a whole. The amendment's clarification of the term "personnel action" to include "failure ... to confer a benefit" left untouched the condition that the employee suffer a "withdrawal" of or "reduction" in compensation.

Federal sovereign immunity is an area in which lower courts have been admonished to construe waivers tightly, despite doubts sparked by contemporary conditions and equitable considerations. *See Library of Congress v. Shaw,* 478 U.S. at 318, 106 S.Ct. at 2963; *Shaw v. Library of Congress,* 747 F.2d 1469, 1487 (D.C.Cir.1984) (dissenting opinion). In view of that instruction, we must resist the argument that any unlawful failure to promote involves the "withdrawal or reduction" of compensation because the employee wrongfully denied promotion does not receive money that he or she otherwise would have.

In recognition of *Testan,* Congress, in 1978, specifically exempted reclassification actions from the Back Pay Act's scope. *See* S.REP. No. 969, 95th Cong., 2d Sess. 115 (1978), *reprinted in* 1978 U.S.CODE CONG. & ADMIN.NEWS 2723, 2837. But Congress said no more. We cannot speculate that, by codifying *Testan* in relation to "any reclassification action," 5 U.S.C. § 5596(b)(3),[2] Congress simultaneously, albeit silently, rendered inoperative or meaningless the "withdrawal or reduction" language upon which the *Testan* opinion rested.

While we cannot ignore the language Congress left untouched, we also cannot ignore the words Congress inserted, *i.e.,* the amplified definition of "personnel action" to include the "failure ... to confer a benefit." The legislative history, we conclude, affords a basis for reconciliation; it shows that Congress intended the 1978 amendment to cover unlawful failures to

promote of a certain, precisely limited, kind. As the Senate Report states, the amendment was intended "to reflect the broader interpretation of the statute that has been given the Back Pay Act in recent years by the Comptroller General and the Civil Service Commission through decision and regulations." S.REP. No. 969, at 114. This "broader interpretation," Comptroller General and Civil Service Commission statements reveal, encompasses noncompetitive, mandatory promotions, not the competitive promotions at issue here.

The Comptroller General's policy at the time of the 1978 legislative adjustment recognized that

> while employees have no vested right to promotion at any specific time, an agency, by negotiation of a collective-bargaining agreement or by promulgation of a regulation, may limit its discretion so that under specified conditions it becomes mandatory to make a promotion on an ascertainable date....
>
> ....
>
> .... The violation of such a mandatory provision in a negotiated agreement which causes an employee to lose pay, allowances or differentials may be found to be an unjustified or unwarranted personnel action under the Back Pay Act....

*In re John Cahill,* 58 Comp. Gen. 59, 61–62 (1978).

Regulations promulgated by the Civil Service Commission at the time of the Civil Service Reform Act of 1978 similarly focused on the noncompetitive aspect of certain promotions. These regulations defined an "unjustified or unwarranted personnel action" to include an act of

> omission ... which it is subsequently determined violated or improperly applied the requirements of *a nondiscretionary provision, as defined herein,* and thereby resulted in the withdrawal, reduction, or denial of all or any part of

---

**2.** We assume Congress, by citing *Testan* to exclude "reclassification actions" from the Back Pay Act, intended to exempt those actions in which government employees claim that their

classification should be upgraded because their duties are the same as other government employees in a higher grade. *See* Classification Act, 5 U.S.C. § 5101 *et seq.*

the pay, allowances, or differentials, ... otherwise due an employee.

5 C.F.R. § 550.802 (1977) (emphasis added). "Nondiscretionary provision," according to these regulations, means

> any provision of law, Executive order, regulation, personnel policy issued by an agency, or collective bargaining agreement that *requires an agency* to take a prescribed action under stated conditions or criteria.

*Id.* (emphasis added).

Reviewing the amendment's legislative history and the policies in effect at the time of its enactment, the Federal Circuit concluded:

> [T]he 1978 amendment was *not* designed to provide payment for all actions which should or might well have been taken, but only for those payments or benefits which were *required* by law (a statute or regulation). The history of the change emphasizes this limited purpose. Previously, the Back Pay Act literally permitted recovery only when the employee incurred "a withdrawal or reduction in pay," thus omitting in words to blanket failures to make *additional* payments that were mandated by law, *e.g.*, a statutory periodic increase or a benefit conferred by a non-discretionary administrative regulation. For some years, the General Accounting Office authorized such payment for non-discretionary benefits, and in 1977 the Civil Service Commission adopted regulations along the same line. The 1978 amendment to the Back Pay Act was specifically intended to incorporate that general administrative position into the Act—and no more.

*Spagnola v. Stockman,* 732 F.2d 908, 912 (Fed.Cir.1984) (Davis, J.) (emphasis in original) (citations omitted). *Spagnola* involved an employee temporarily detailed, long beyond the lawful period, to higher-level work, but paid throughout the period at his lower-grade rate. The Federal Circuit's reasoning, however, fully fits this case.

Guided by *Spagnola*,[3] we comprehend the 1978 Back Pay Act definitional amendment to mean that if an upgrade is mandatory once specified conditions are met, the Act now affords a retrospective remedy. If an upgrade is not of that virtually automatic, noncompetitive kind, the Act affords no relief. Only in the former case will the employee be treated as one already "duly appointed" to the higher position, so that the failure to confer the benefit constitutes a "withdrawal or reduction" in compensation.[4]

Appellants seek to fit their cases within the "nondiscretionary" or mandatory upgrade category by urging that, absent unlawful discrimination, they would have been selected for advancement, hence they "had a right to the promotions at the time they were denied them." *See* Brief for Appellants at 23. Appellants did not, however, have a right to the promotions *before* they were denied them. The agencies, in their discretion, could have decided to eliminate, or not to create, the sought-after positions. We do not read the repeated use of the words "mandatory," "nondiscretionary," and "require[d]" in the legislative history and background regulations to "merely indicat[e]" that the Back Pay Act affords no remedy for lawful action. *But see* dissent at 223. Instead, we read those words to mean that the agency never had any choice but to take the particular, precisely defined action in question.

---

**3.** The Federal Circuit in *Spagnola,* faithful to the circumscribed interpretations of the Comptroller General·and the Civil Service Commission, declined to sweep into the "nondiscretionary" category *all* unlawful personnel actions, the giant step our dissenting colleague's position obliges her to take.

**4.** Our conclusion that the 1978 amendment to the Back Pay Act covers some but not all promotions is consistent with the comment in the Senate Report that the amended Act would extend to any employee who is found to have suffered a "withdrawal, reduction, denial or denial of an increase in" compensation as a result of an unjustified or unwarranted personnel action. That comment is followed up by the qualification that, in referring to personnel action that is "unjustified or unwarranted," the legislators meant "acts of commission as well as omission with respect to *nondiscretionary* provision of law, Executive order, regulation, or collective bargaining agreement." S.Rep. No. 969, at 115 (emphasis added).

In sum, the Back Pay Act, as currently framed, contains clauses tugging in opposite directions. We have adopted a reading that, if less than fully satisfying, is consistent with the Supreme Court's instruction that federal sovereign immunity waivers must be unambiguously expressed, and construed strictly in favor of the sovereign. *See Library of Congress v. Shaw*, 478 U.S. at 318, 106 S.Ct. at 2963. Our reading follows a path between two impassable obstacles: ignoring the 1978 amendment because no "failure ... to confer a benefit" will ever satisfy the "withdrawal or reduction" requirement; or ignoring the original, unrepealed mandate that there be a "withdrawal or reduction" in compensation.

### Conclusion

For the reasons stated, the judgments of the district court denying interest on the back pay awarded to appellants as a remedy for Title VII violations are

*Affirmed.*

WALD, Chief Judge, dissenting as to Part II:

I agree with the panel that the Back Pay Act, 5 U.S.C. § 5596, applies to actions by federal employees under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and thus waives, to the extent of its coverage, the federal government's sovereign immunity from prejudgment interest on awards of back pay resulting from successful Title VII actions. Consistent with the *ratio decidendi* of that conclusion, however, I dissent from the panel's holding that the Back Pay Act does not encompass denials of promotions that are held to be unlawful under Title VII.

As part of the Civil Service Reform Act of 1978, Congress amended the Back Pay Act to expand the definition of "unjustified or unwarranted personnel action[s]" covered by the Act to include "the omission or failure to take an action or confer a benefit." Pub.L. No. 95–454, § 702, 92 Stat. 1111, 1216 (1978) (codified at 5 U.S.C. § 5596(b)(4)). An unlawful failure to promote an individual is a quintessential example of an "unwarranted personnel action" committed by failing to "take an action" or to "confer a benefit." Moreover, the legislative history indicates that the amendment was meant "to reflect the broader interpretation ... given [to] the Back Pay Act in recent years by the Comptroller General and the Civil Service Commission through decision and regulation." S.Rep. No. 969, 95th Cong., 2d Sess. 114 (1978), *reprinted in* 1978 U.S.CODE CONG. & AD.NEWS 2723, 2836. As the panel notes, these agencies had interpreted the Back Pay Act to apply to at least certain categories of promotions. *See, e.g., In re John Cahill*, 58 Comp. Gen. 59, 61–62 (1978) (extending Act to "mandatory" promotions required by collective bargaining agreements); 5 C.F.R. § 550.802 (1978) (applying Act to "nondiscretionary" promotions).

The unqualified language added by the 1978 amendment, extending the Back Pay Act to cover the "failure to take an action or confer a benefit," presumptively applies to all categories of actions covered by the Act, including—as the panel has decided—those under Title VII, absent strong evidence indicating that Congress intended to give the language less than its plain meaning. The panel, however, concludes that the 1978 amendment extended the Act only to promotions of a very limited kind rarely if ever at issue in Title VII promotions cases. Majority Opinion ("Maj. op.") at 219–221. I am unpersuaded.

The panel is uncomfortable, as was the district court, with the fact that Congress in 1978 left unchanged the Back Pay Act's requirement that an aggrieved employee suffer a "withdrawal or reduction" in pay. 5 U.S.C. § 5596(b)(1). Because the wrongful denial of a promotion results in neither a "withdrawal" nor a "reduction" in an employee's existing pay, but merely deprives the employee of an increase in that pay, the panel concludes that this language is in tension with Congress' extension of the Act to "omission[s] or failure[s] to take an action or confer a benefit." Maj. op. at 218–219. The legislative history of the amendment, however, provides a satisfactory explanation that reinforces the plain language of the amendment itself. The

Senate Report, after stating that the amendment reflects the "broader interpretation" given to the Act by the Civil Service Commission and the Comptroller General, indicates that Congress intended the words "withdrawal or reduction" to be read more expansively in the future to cover "a withdrawal, reduction, *denial, or denial of an increase in*" all or part of an employee's compensation. S.Rep. No. 969 at 115, *reprinted in* 1978 U.S.CODE CONG. & AD.NEWS at 2837 (emphasis added). This indication of an intent to adopt a more expansive construction of an old term to accommodate a new one resolves the tension and emphasizes the amendment's extension of the Act to unlawful denials of promotions and other acts of omission or failures to confer benefits.[1]

In any event, the panel refuses in at least some cases to allow the "withdrawal or reduction" language to trump Congress' clear intent to expand the Back Pay Act to promotions.[2] Relying on the broader interpretation that had theretofore been given

to the Back Pay Act by the Comptroller General and the Civil Service Commission, the panel concludes that Congress intended back pay to extend only to those promotions that are "mandatory" or "nondiscretionary" so that the aggrieved employee may "be treated as one already 'duly appointed' to the higher position" and the failure to promote as the equivalent of a "withdrawal or reduction" in pay. Maj. op. at 220. The panel reads this standard as applying only where an agency is required to take a specified action. *Id.* at 220. The problem with this analysis, however, is that promotions denied for discriminatory reasons in violation of Title VII also meet this test. Title VII is an instruction to employers not to permit discrimination to infect their employment decisions, and the finding required in order to hold an employer liable for back pay in a Title VII promotions case—that an employee would have been promoted absent illegal discrimination[3]—falls squarely within the Civil Ser-

---

1. In *Spagnola v. Stockman,* 732 F.2d 908, 912 (Fed.Cir.1984), the Federal Circuit construed this piece of the legislative history to indicate that Congress intended to expand the words "withdrawal or reduction" to cover only those types of promotions recognized by the Comptroller General and the Civil Service Commission, and no more. The court stated:

 > Previously, the Back Pay Act literally permitted recovery only when the employee incurred 'a withdrawal or reduction' in pay, 5 U.S.C. § 5596(b) (1976)—thus omitting in words to blanket failures to make *additional* payments that were mandated by law, *e.g.,* a statutory periodic increase or a benefit conferred by a non-discretionary administrative regulation. For some years, the General Accounting Office authorized such payment for non-discretionary benefits ... and in 1977 the Civil Service Commission adopted regulations along the same line.... The 1978 amendment ... was specifically intended to incorporate that general administrative position into the Act—and no more.

 *Id.* (citing to Senate Report). As explained below, however, I believe this language in *Spagnola* is fully consistent with construing the 1978 amendment to cover the types of promotions at issue in the typical Title VII promotions action.

2. To this extent, then, the panel accepts that the 1978 amendment limited the Supreme Court's decision in *United States v. Testan,* 424 U.S. 392, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). In *Testan,* the plaintiffs sought the reclassification of their positions to a higher grade and claimed a corre-

 sponding right to back pay for the period when they were performing the work required of those in the higher grade. The Court denied them relief, holding that the Back Pay Act applies only where there is an actual "withdrawal or reduction" in an employee's existing pay. *Id.* at 406–07, 96 S.Ct. at 957. The legislative history of the 1978 amendment recognized and confirmed the *Testan* decision, but expressly limited it to reclassification actions. *See* S.Rep. No. 969 at 114, *reprinted in* 1978 U.S.CODE CONG. & AD.NEWS at 2836 (the amendment "reflects the 1976 decision of the Supreme Court in *United States v. Testan* by explicitly exempting reclassification actions from its provisions").

3. Prior to *Price Waterhouse v. Hopkins,* 490 U.S. 228, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989), the circuits were split over precisely what the plaintiff in a Title VII disparate treatment case had to prove in order to establish liability on the part of the employer. Some circuits required the plaintiff to prove that the decision would have been in her favor but for the discrimination, *see, e.g., Peters v. City of Shreveport,* 818 F.2d 1148, 1161 (5th Cir.1987); other circuits, including this one, held that once a plaintiff had shown that discrimination contributed to the employment decision, the burden shifted to the employer to show that the same decision would have been made absent consideration of the impermissible factor, *see, e.g., Toney v. Block,* 705 F.2d 1364, 1366 (D.C.Cir.1983); and still other circuits distinguished the question of liability from that of remedies, holding that a Title VII

vice Commission's definition of a "nondiscretionary" action. That definition encompassed

> any provision of law, Executive order, regulation, personnel policy issued by an agency, or collective bargaining agreement that requires an agency to take a prescribed action under stated conditions or criteria.

5 C.F.R. § 550.802 (1978). Title VII, a "provision of law," "requires" a federal employer to "take a prescribed action under stated ... criteria," namely, to promote an employee is not doing so would violate Title VII's bar on discrimination.

If a failure to promote is illegal under substantive law, then, a federal employer has no discretion and must promote the employee. I read the Civil Service Commission's use of the word "nondiscretionary," and Congress' adoption of it in the legislative history of the 1978 amendment, as merely indicating that the Back Pay Act is not intended to apply to *any* employment act that is legal because entrusted to the discretion of the federal employer. This is borne out by the language in the legislative history quoted by the panel, Maj. op. at 220 n. 4, indicating that "unjustified or unwarranted" personnel actions are "acts of *commission as well as omission* with respect to nondiscretionary provision[s] of law, Executive order, regulation or collective bargaining agreement." S.Rep. No. 969 at 115, *reprinted in* 1978 U.S.CODE CONG. & AD.NEWS at 2837 (emphasis added). This, of course, is fully consistent with the fact that the Back Pay Act itself provides no substantive rights, but merely provides a remedy—back pay—where a federal em-

ployee is found to have suffered an "unjustified or unwarranted personnel action" by "an appropriate authority" under "applicable law, rule, regulation, or collective bargaining agreement." 5 U.S.C. § 5596(b)(1).

The absence of any pre–1978 application of the "nondiscretionary" standard to discriminatory promotions actions by the Civil Service Commission or the Comptroller General can also be easily explained: The three major pieces of federal discrimination legislation that applied to federal employees prior to 1978—Title VII, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, and the Equal Pay Act, 29 U.S.C. § 206—all provided for their own back pay remedies. Because the Back Pay Act at that time did not waive the government's immunity from prejudgment interest, there was no need for a federal employee suing under one of these statutes to resort to the Back Pay Act for relief, and thus there was nothing compelling the federal agencies that administered the Back Pay Act to address the question presented here—whether the Back Pay Act applies to wrongful denials of promotions under these statutes. That historic circumstance should not, however, detract from the plain text of the 1978 amendment itself, which broadened the Back Pay Act's coverage to failures to take actions or confer benefits.

Finally, the panel demurs on the ground that *Library of Congress v. Shaw*, 478 U.S. 310, 106 S.Ct. 2957, 92 L.Ed.2d 250 (1986), instructs us to find waivers of the government's sovereign immunity from interest only where Congress has clearly expressed such an intent. Once the panel has deter-

---

violation was made out upon plaintiff's showing that discrimination was a factor in the decision, but that equitable remedies such as back pay and promotions would not be granted if the employer could demonstrate that the same decision would have been made absent the discrimination. *See, e.g., Fadhl v. City and County of San Francisco,* 741 F.2d 1163, 1165–66 (9th Cir. 1984). All circuits, however, were united in refusing to impose equitable remedies absent a showing—either by direct proof or by the employer's failure to rebut a presumption in favor of plaintiff—that plaintiff would have received the position but for discrimination by the employer.

The Supreme Court's decision in *Price Waterhouse* resolved this intercircuit conflict by holding that a Title VII plaintiff must show only that discrimination was a factor in an adverse employment decision, but that the employer can avoid a finding of liability, along with remedies such as back pay and promotions, by demonstrating that its decision would have been the same absent consideration of the illicit factor. *See* 109 S.Ct. at 1784–93 (plurality opinion). Thus, after *Price Waterhouse,* the remedies question remains the same as before: whether, absent the discrimination, the person would have received the position.

mined, however, that Congress waived the government's immunity in the Back Pay Act with respect to Title VII actions, that waiver should be given its full and natural effect unless there are indications that Congress intended otherwise. This accords with the Supreme Court's approach in *Loeffler v. Frank*, 486 U.S. 549, 108 S.Ct. 1965, 100 L.Ed.2d 549 (1988), where the Court held that Congress had waived the government's immunity from interest in Title VII actions against the United States Postal Service by providing in the Postal Reorganization Act of 1970, 39 U.S.C. § 401(1), that the Postal Service could "sue and be sued." The Court stated that such waivers of governmental immunity "should be liberally construed" absent indications that Congress intended the waiver to be interpreted narrowly and absent any inconsistency with a broader statutory policy or scheme.[4] *Id.* at 554–57, 108 S.Ct. at 1968–70. For the reasons given above, I find no indication that Congress intended its 1978 amendment of the Back Pay Act to have any less comprehensive effect than its language naturally suggests—extending the scope of the Act to all cases involving an "unjustified or unwarranted" denial of promotion under applicable law, regulation, or collective bargaining agreement, including discriminatory denials of promotions under Title VII. Moreover, a liberal construction of the waiver of immunity accomplished by the Back Pay Act would be fully consistent with the Act's general policy of providing federal employees with a remedy for compensation lost due to "unjustified or unwarranted personnel action[s]." I therefore respectfully dissent from the panel's holding that denials of promotions held unlawful under Title VII are not encompassed by the Back Pay Act.

---

**4.** Although the Supreme Court in *Loeffler* applied this "liberal construction" rule only in the context of a "sue and be sued" clause in a federal agency's enabling legislation, there is no reason it should not be applied more generally to cover waivers of the type at issue in this case.