**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**
Nos. 96-4183/97-1192

| | |
|---|---|
| Stephen A. Arneson, | * |
| | * |
| Appellee, | * |
| | * |
| v. | * Appeals from the United States District |
| | * Court for the Eastern District of |
| John J. Callahan,[1] Acting | * Missouri. |
| Commissioner of the Social Security | * |
| Administration, | * |
| | * |
| Appellant. | * |

_____

Submitted: September 10, 1997
Filed: November 7, 1997
_____

Before BEAM, FLOYD R. GIBSON, and HEANEY, Circuit Judges.
_____

BEAM, Circuit Judge.

The Social Security Administration appeals the amount of back pay the district court awarded Stephen A. Arneson. We affirm in part and reverse in part.

---

[1]John J. Callahan was named Acting Commissioner of the Social Security Administration effective March 1, 1997. He has been substituted as appellant for Shirley S. Chater pursuant to Fed. R. App. P. 43(c).

## I.   BACKGROUND

This dispute is before us for the third time.  We will discuss only those facts relevant to this appeal.  Stephen A. Arneson sued the Social Security Administration (SSA), claiming that it violated the Rehabilitation Act of 1973, 29 U.S.C. §§ 701-796 in discharging him from his government position.  Arneson suffers from a neurological disorder, apraxia, which affects his ability to concentrate and perform certain tasks.

The district court dismissed the suit and Arneson appealed.  This court remanded to determine whether the SSA failed to make reasonable accommodations for Arneson's disability.  Arneson v. Heckler, 879 F.2d 393, 400 (8th Cir. 1989).  On remand, the district court entered judgment for the SSA.   In Arneson v. Sullivan, 946 F.2d 90, 92-93 (8th Cir. 1991), we reversed that judgment, ordered the SSA to reinstate Arneson, and remanded the case for a determination of the amount of back pay that the SSA owes Arneson. The SSA now claims that the district court made three errors in that calculation.

First, the SSA contends that the district court erroneously awarded Arneson prejudgment interest accruing from his unlawful discharge.  Second, the SSA contends that the district court erred in awarding Arneson additional monies to compensate him for the adverse tax consequences associated with receiving twelve years of back pay in two payments. Finally, the SSA contends that the district court erred in declining to reduce Arneson's back pay award by the amount of disability retirement benefits that Arneson received.

**II.   DISCUSSION**

**A.    Prejudgment Interest**

The no-interest rule provides that sovereign immunity generally precludes a party from recovering interest in a suit against the United States.  See Library of Congress v. Shaw, 478 U.S. 310, 311 (1986). Congress may expressly waive the government's sovereign immunity from interest by statute or contract, see, e.g., id., at 317, or by removing the cloak of sovereignty and giving the "status of a 'private commercial enterprise.'" Loeffler v. Frank, 486 U.S. 549, 556 (1988) (quoting Shaw, 478 U.S. at 317 n.5).[2]

The Rehabilitation Act does not provide for prejudgment interest; however, it expressly incorporates the "remedies, procedures and rights" of Title VII.  29 U.S.C. § 794 (a)(1).  Title VII of the Civil Rights Act of 1964, provides that a court may order an employer to reinstate employees "with or without back pay" or order "any other equitable relief as the court deems appropriate."  42 U.S.C. § 2000e-5(g)(1).  Arneson argues that Congress waived sovereign immunity from interest under Title VII or, alternatively, that the Back Pay Act, 5 U.S.C. § 5596, provides the necessary waiver.[3]

---

[2]The Supreme Court has also held that just compensation under the Fifth Amendment takings clause waives sovereign immunity from interest.  Smyth v. United States, 302 U.S. 329, 353 (1937).

[3]Sovereign immunity is a jurisdictional question which the government can raise at any time. See, e.g., Preferred Risk Mut. Ins. Co. v. United States, 86 F.3d 789,  793 (8th Cir. 1996), cert. denied, 117 S. Ct. 1245 (1997).  Thus, we reject Arneson's argument that the government waived its claim of sovereign immunity by failing to immediately appeal the district court's order awarding Arneson interest on his back pay award.

The Supreme Court has previously held that Title VII does not waive the federal government's sovereign immunity from interest.[4] Shaw, 478 U.S. at 319. The Court stated that waivers of sovereign immunity must be strictly construed in the sovereign's favor. Id. at 318. Furthermore, the Court stated:

> [T]here can be no consent by implication or by use of ambiguous language. Nor can an intent on the part of the framers of a statute or contract to permit the recovery of interest suffice where the intent is not translated into affirmative statutory or contractual terms. The consent necessary to waive the traditional immunity must be express, and it must be strictly construed.

Id. (alternation in original) (quoting United States v. N. Y. Rayon Importing Co., 329 U.S. 654, 659 (1947)). See also, e.g., Miller v. Alamo, 992 F.2d 766 (8th Cir. 1993) (Congress must clearly and unequivocally waive the government's sovereign immunity).

After Shaw, Congress amended Title VII, expressly waiving sovereign immunity from interest. 42 U.S.C. § 2000e-16(d). Neither party disputes that the district court properly awarded Arneson interest beginning on November 21, 1991, the amendment's effective date. However, the 1991 amendment does not apply retroactively. See Huey v. Sullivan, 971 F.2d 1362, 1365-66 (8th Cir. 1992). Nonetheless, Arneson argues that he is entitled to interest on his back pay award from January 21, 1983, through November 21, 1991, because the Back Pay Act waives sovereign immunity.

---

[4] In Shaw, the plaintiff argued that Congress waived sovereign immunity from interest under Title VII because Title VII holds the United States "liable 'the same as a private person' for 'costs,' including 'a reasonable attorney's fee.'" Shaw, 478 U.S. at 317-18 (quoting 42 U.S.C. § 2000e-5(k)).

The Back Pay Act generally provides certain federal agency employees with a monetary remedy for "unjustified or unwarranted personnel action which has resulted in the withdrawal or reduction" of the employees' pay. 5 U.S.C. § 5596(b)(1). The Back Pay Act did not provide for interest against the United States until Congress amended it in 1987. 5 U.S.C. § 5596(b)(2)(A).

Arneson cites three circuit decisions for the proposition that the amended Back Pay Act waives the government's sovereign immunity from interest awards in Rehabilitation Act and Title VII cases. See Brown v. Secretary of the Army, 918 F.2d 214 (D.C. Cir. 1990); Edwards v. Lujan, 40 F.3d 1152, 1154 (10th Cir. 1994) (adopting Brown); Woolf v. Bowles, 57 F.3d 407, 410 (4th Cir. 1995) (adopting Brown). With due respect to our sister circuits, we find the reasoning in those cases inconsistent with sovereign immunity and the no-interest rule.

In Brown, the court held that the Back Pay Act waives the federal government's sovereign immunity from interest in Title VII cases. Brown, 918 F.2d at 218. The court relied upon Loeffler, 486 U.S. at 556, for the proposition that a statute other than Title VII can provide the requisite sovereign immunity waiver. Brown, 918 F.2d at 216. The court stated, "The government offers no convincing reason why the Back Pay Act does not supply the immunity waiver prescription absent in Title VII, just as the Postal Reorganization Act does." Id. The court next held that because the Back Pay Act complements Title VII, the Back Pay Act waives sovereign immunity from interest for any claim which could have been brought under the Back Pay Act.[5] Id. at 218.

---

[5]In Brown, the plaintiffs brought an unlawful failure to promote claim under Title VII and not the Back Pay Act. Brown, 918 F.2d at 216. Because the Back Pay Act limits its protections to the unlawful "withdrawal or reduction" of compensation, 5 U.S.C. § 5596(b)(1), and the plaintiffs alleged unlawful failure to promote, the court did not award them any interest from the government. Brown, 918 F.2d at 221.

We find this reasoning unpersuasive.  In <u>Loeffler</u>, 486 U.S. at 556, the Supreme Court held that Congress expressly waived the postal service's sovereign immunity at its inception because, under the 1970 Postal Reorganization Act, the postal service assumed the role of a "private commercial enterprise."  Express and unequivocal Congressional waiver of sovereign immunity was not required in <u>Loeffler</u> because the postal service fit within the "private commercial enterprise" exception to the no-interest rule.  <u>Id.</u>  In cases like <u>Brown</u> and the present one however, the private commercial enterprise exception does not apply.

We hold that to provide the sovereign immunity waiver absent in Title VII, the separate statute must, at a minimum, unequivocally express Congress's intent to waive sovereign immunity under Title VII.  <u>Cf.</u> <u>McGehee v. Panama Canal Comm'n</u>, 872 F.2d 1213, 1215 (5th Cir. 1989) (holding that for Congress to waive sovereign immunity by statute, the "legislation giving rise to the cause of action" itself must expressly subject "the government to interest payments").

In this Rehabilitation Act case, Arneson recovered back pay under Title VII's remedial provisions.  He did not rely upon the Back Pay Act to recover back pay, but now asserts that the Back Pay Act provides the necessary waiver of sovereign immunity.  The Back Pay Act language relied upon by Arneson states that "[a]n amount payable under paragraph (1)(A)(I) of this subsection shall be payable with interest."  5 U.S.C. § 5596(b)(2)(A).  The amended Back Pay Act does not even mention Title VII or the Rehabilitation Act.  This provision does not evidence Congress's clear and unequivocal consent to interest awards against the government under the Rehabilitation Act and Title VII.  Had Congress desired to waive sovereign immunity from interest awards under either the Rehabilitation Act or Title VII, it would not have limited Section 5596(b)(2)(A) interest awards to amounts payable under "paragraph (1)(A)(I)."  Congress could also have expressed its intent by amending Title VII before 1991.

The Supreme Court's decisions addressing sovereign immunity and the no-interest rule buttress our holding. The Court has instructed us to construe the scope of such waivers in the sovereign's favor, see Shaw, 478 U.S. at 318; to limit such waivers to their plain language, see Ruckelshaus v. Sierra Club, 463 U.S. 680, 694 (1983); and to construe "ambiguities in favor of immunity." United States v. Williams, 514 U.S. 527, 531 (1995). The Back Pay Act does not expressly and unambiguously waive the federal government's sovereign immunity from interest awards under the Rehabilitation Act or Title VII. We therefore reverse the prejudgment interest award to the extent it relies upon the Back Pay Act to waive sovereign immunity.[6]

## B.   Tax Enhancement Damages

The district court awarded Arneson additional monies to compensate Arneson for the adverse tax consequences from receiving back pay in two payments (tax enhancement award). The SSA argues that tax enhancement awards are not available under Title VII and that, if available, Congress has not waived sovereign immunity from these awards.

If the tax enhancement remedy is available under Title VII, we find it analogous to the prejudgment interest remedy, see Manko v. United States, 830 F.2d 831, 836 (8th Cir. 1987), as an element of making persons whole for discrimination injuries. See Loeffler, 486 U.S. at 558. Therefore, we treat the tax enhancement remedy like the prejudgment interest remedy and hold that Congress must expressly and unequivocally waive sovereign immunity before a party can recover a tax enhancement award from the federal government.

We do not believe that Congress has authorized the tax enhancement remedy against the federal government. Nowhere within the statutory framework of the

_____

[6] In light of this finding, we need not address Arneson's argument that the 1987 Back Pay Act amendment applies retroactively.

Rehabilitation Act or Title VII, has Congress expressly waived sovereign immunity from tax enhancement damages. The mere fact that Congress intended that discrimination victims receive a full measure of back pay does not amount to an unequivocal and express waiver of sovereign immunity. We therefore reverse the district court's award of tax enhancement damages.[7]

### C.  Disability Retirement Annuity

After his unlawful discharge, Arneson received Civil Service Retirement System (CSRS) disability retirement benefits (disability benefits) in the amount of $72,241.87. The SSA argues that we should deduct the amount of these benefits from Arneson's back pay award because Arneson would otherwise receive a double recovery. We disagree.

The Title VII back pay remedy is limited by 42 U.S.C. § 2000e-5(g), which provides in part, "[i]nterim earnings . . . by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable." This provision prevents employment discrimination victims from recovering twice for the same injury. The SSA argues that Arneson's disability benefits constitute interim earnings.

Because the National Labor Relations Act provides the model for the Title VII back pay remedy, see Craig v. Y & Y Snacks, Inc., 721 F.2d 77, 82 (3d Cir. 1983), we find the Court's decision in NLRB v. Gullett Gin Co., 340 U.S. 361 (1951) particularly relevant to this issue.

---

[7] Because we believe Congress has not unequivocally expressed its intention to waive the federal government's sovereign immunity from this tax enhancement award, we need not decide whether plaintiffs may recover this type of award against private parties.

The common law collateral source rule holds that the defendant's liability shall not be reduced merely because the plaintiff's net damages are reduced by payments received from others. See Gullett Gin, 340 U.S. at 364. In Gullett Gin, the Court applied the collateral source rule to uphold the National Labor Relations Board's refusal to deduct unemployment benefits from an employee's NLRA back pay award for unlawful discharge. Id. The Court held that the unemployment benefits at issue were collateral because they were not direct benefits from the employer and they were made "to carry out a policy of social betterment for the benefit of the entire state." Id.

We have previously addressed this issue under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621. See, e.g., Smith v. World Ins. Co., 38 F.3d 1456, 1465 (8th Cir. 1994). In Smith, we refused to reduce an ADEA back pay award by pension benefits received on account of the employee's wrongful discharge and remanded the case to determine whether "the award of backpay includes amounts designed to put [the employee's] pension account in the same position as though he were never discharged." Id. at 1466.

We affirm the district court's refusal to deduct Arneson's disability benefits from his back pay award because these benefits were from a collateral source and should not be considered interim earnings.[8] Cf. Eichel v. New York Central R.R. Co., 375 U.S. 253, 254 (1963) (stating "[r]espondent does not dispute that it would be highly improper for the disability pension payments to be considered in mitigation of" petitioner's damages). We believe Arneson's back pay award does not include monies

---

[8]This case is distinguishable from Beshears v. Asbill, 930 F.2d 1348 (8th Cir. 1991). Beshears involved an employee that received disability benefits due to injuries which were unrelated to his unlawful discharge. Id. at 1355. Thus we adopted the test articulated by the Tenth Circuit in Spulak v. K Mart Corp., 894 F.2d 1150, 1158 (10th Cir. 1990), to determine whether the disability benefits received should operate to reduce the employee's wrongful discharge back pay award. Beshears, 930 F.2d at 1355. By contrast, Arneson received disability benefits as a result of the government's wrongful termination. Therefore, we do not apply the Beshears analysis.

for disability pension contributions that the SSA would have made but for Arneson's wrongful termination. Moreover, the disability benefits do not come entirely from Arneson's employer because Arneson has unquestionably contributed to his CSRS disability retirement fund. Finally, the payments to Arneson from the CSRS disability fund were made to carry out a social policy wholly independent of back pay awards and they did not discharge any direct obligation that the SSA had to Arneson. See Gullett Gin, 340 U.S. at 364.

### D. Attorney's Fees and Costs

The district court awarded Arneson attorney's fees totaling $178,610 and other costs totaling $9,381.13. The SSA argues that Arneson should not recover the fees and costs related to any issues that Arneson loses on appeal because Arneson would no longer be the prevailing party with respect to those issues. We agree.

Under Title VII, the district court may, in its discretion, award "the prevailing party" a "reasonable attorney's fee (including expert fees) as part of the costs." 42 U.S.C. § 2000e-5(k).[9] In awarding attorney's fees and costs when the plaintiff has only achieved limited or partial success, the court must consider "whether the expenditure of counsel's time was reasonable in relation to the success achieved." Hensley v. Eckerhart, 461 U.S. 424, 436 (1983).

We find Arneson's post-trial claims for prejudgment interest and a tax enhancement award distinct and unrelated to those that he has prevailed on, see id. at 437 n.12, and thus, the district court has the discretion to reduce Arneson's award of costs, including attorney's fees, accordingly. We recognize that "[t]here is no precise rule or formula for making these determinations." Id. at 436. However, "[a] request

---

[9]Congress expressly waived the government's sovereign immunity from costs and attorney's fees. 42 U.S.C. § 2000e-5(k) ("[T]he United States shall be liable for costs the same as a private person.").

for attorney's fees should not result in a second major litigation." <u>Id.</u> at 437.  Nonetheless, we remand the case to enable the court most familiar with the litigation to award Arneson a reasonable fee in relation to the results obtained on appeal.

**III.      CONCLUSION**

For the foregoing reasons, we affirm the district court decision in part and reverse in part.  We remand the case for a redetermination of interest and costs, including attorney's fees.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.